Stanley F. TAYLOR, Plaintiff-Appellee,

v.

BURLINGTON NORTHERN
RAILROAD COMPANY,
Defendant-Appellant.

No. 84–3764.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1985.

Decided April 18, 1986.

Allan R. Wales and David G. Laidman, Hayes & Wales, Seattle, Wash., for plaintiff-appellee.

George C. Inman, Jr., Seattle, Wash., for defendant-appellant.

Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.

KENNEDY, Circuit Judge:

Stanley Taylor, a former employee of Burlington Northern Railroad, brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982), alleging that harassment by Burlington's foreman caused him to suffer paranoid schizophrenia. Burlington appeals from the jury verdict awarding Taylor $504,000, and we reverse the judgment and remand the case for a new trial.

Burlington hired Taylor in June 1977 as a section laborer. Born in 1953, he is borderline mentally retarded, and, at least at the time he was hired, he was quite obese. The foreman on two of the section gangs on which Taylor worked was Prentice Bradford. Although Bradford did not have a high regard for Taylor, there was no trouble between them initially.

Taylor's problems apparently began in November 1978. Taylor had a fight with a

coworker who followed him home one evening and pistol-whipped him; as a result, Taylor lost an eye. He spent a month with his family in Portland and several months with his brother in Chicago. During this period, his family thought he was acting differently, and he was delusional.

When Taylor returned to work in April 1979, Bradford began harassing and mistreating him on a regular basis. Bradford claimed that constant criticism was necessary because Taylor was a poor worker who used drugs and prostitutes and was involved in fights. Bradford used sexual and, although both men are black, racial epithets against Taylor, threatened him with a knife, pulled him around by his beard, and cut off a portion of his beard on one occasion. Other employees confirmed these allegations at trial. Taylor testified, however, that Bradford never cut, scraped, or bruised him. Taylor reported Bradford's use of a knife to Burlington's roadmaster and Bradford's supervisor, Ken Pellens, but Pellens did not conduct a formal investigation. In late 1979, Taylor transferred to another section, ostensibly to escape from Bradford. According to Taylor, however, Bradford visited him there in order to continue the harassment.

In April 1981, Taylor was involved in a fight with a coworker and left work out of fear. After a six-week disappearance, his father found him in a muddy field in Vancouver. Soon after Taylor returned to his family in Portland, he was committed to a mental hospital and diagnosed as having paranoid schizophrenia. He was released in July 1981 but received injections of an antipsychotic drug on an outpatient basis. He returned to work on a section gang in Oregon, but Burlington terminated him in March 1982 for insubordination and failure to work. He was committed again.

At trial several expert witnesses testified that Bradford's abusive conduct contributed to Taylor's paranoid schizophrenia. Burlington also introduced evidence suggesting that fights with fellow crew members, the loss of an eye in one such fight, and substance abuse contributed to his psychosis.

 Appellant first argues that the district court erred in denying its two motions for dismissal for failure to state a cause of action, on the ground that the FELA does not provide for recovery for wholly mental, as opposed to physical, injuries. Section 1 of the FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51. The law of this circuit is that railroad employees may assert claims under this section for wholly mental injury. *Buell v. Atchison, Topeka & Santa Fe Railway*, 771 F.2d 1320 (9th Cir.1985), *petition for cert. filed*, 54 U.S.L.W. 3485 (U.S. Jan. 6, 1986) (No. 85–1140); *accord McMillan v. Western Pacific Railroad*, 54 Cal.2d 841, 357 P.2d 449, 9 Cal.Rptr. 361 (1960). We recognize that the issue of recovery for mental injury is one of importance to the enforcement of the FELA, and that the Seventh Circuit recently made observations that conflict with *Buell's* holding. *See Lancaster v. Norfolk & Western Railway*, 773 F.2d 807, 813–15 (7th Cir.1985). But the case at bar is not one of first impression in this circuit, and, despite our reservations, we are bound by *Buell.* Even if *Buell* were not binding, however, it is not clear from the record before us that appellant presents no evidence of a physical touching or injury.

 Burlington also contends that the district court committed reversible error in refusing to instruct the jury on comparative negligence. Under the FELA, an employee is entitled to recover damages if the employer's negligence played *any* part in producing the injury, no matter how slight. *Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957); *Richardson v. Missouri Pacific Railroad*, 677 F.2d 663, 665 (8th Cir.1982); *see Funseth v. Great Northern Railway*,

399 F.2d 918, 922 (9th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 865, 21 L.Ed.2d 775 (1969); 45 U.S.C. § 51. However, the FELA also contains a mandatory rule of comparative negligence, so that the damages are reduced in proportion to the amount of injury caused by the employee. *Jamison v. Encarnacion,* 281 U.S. 635, 639, 50 S.Ct. 440, 442, 74 L.Ed.2d 1082 (1930); *Caillouette v. Baltimore & Ohio Chicago Terminal Railroad,* 705 F.2d 243, 246 (7th Cir.1983); 45 U.S.C. § 53. The question of how much of the injury is attributable to the employee's own actions and lack of due care for his own condition is to be decided by the jury if there is any evidence at all of contributory negligence. *See Sears v. Southern Pacific Co.,* 313 F.2d 498, 502–03 (9th Cir.1963); *Daulton v. Southern Pacific Co.,* 237 F.2d 710, 713 (9th Cir.1956), *cert. denied,* 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 549 (1957).

■ The district court abused its discretion in refusing to give an instruction on comparative negligence. Burlington presented evidence at trial suggesting that Taylor participated in heated verbal exchanges with Bradford at work. Burlington also introduced evidence tending to show that Taylor's fighting with his co-workers contributed to his stress. Further, although an expert witness testified that Taylor's marijuana and cocaine use was too remote in time to be related to Taylor's condition, other evidence suggested that the drug use may have played a part in causing Taylor's mental collapse. We discuss below whether evidence of Taylor's drug use was admissible at trial. To the extent it was admissible, it may have borne on Taylor's contributory negligence. Taylor's own lack of due care for his own condition may have reduced Burlington's liability, and the jury should have been allowed to consider whether Taylor acted without due care.

■ Burlington next contends that the district court erred in failing to give its proposed instruction that there may be more than one cause of Taylor's injury. *See* 3 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 94.14 (1977). Psychiatrists testified that paranoid schizophrenia has multiple causes and that job stress is only one such cause. Other causes of stress on which evidence was presented were Taylor's mental retardation, obesity, fighting, drug use, and loss of his eye. Although the proposed charge may have more clearly instructed the jury to consider the independent causes of Taylor's mental illness, the court gave other instructions requiring the jury to examine causation. The court told the jury that "[t]here may be one or more proximate causes of an injury," and instructed the jury to consider Taylor's preexisting mental condition in order to reduce Burlington's liability. The district judge has discretion in formulating jury instructions and is not required to use the exact words proposed by either party. The judge does not abuse his discretion so long as, viewed as a whole, the instructions adequately describe the parties' theories of the case. *Los Angeles Memorial Coliseum Commission v. National Football League,* 726 F.2d 1381, 1398 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984); *Ragsdell v. Southern Pacific Transportation Co.,* 688 F.2d 1281, 1282 (9th Cir.1982) (per curiam). He did not abuse his discretion here.

■ Next, Burlington argues that the district court erred in refusing to give its proposed instruction that an employer is not liable for the intentional torts of its employee when the employee's purpose is not in furtherance of the employer's business. Despite FELA's explicit reference only to negligence, the courts have found that two theories of liability exist in FELA cases involving intentional assaults by one employee upon another: respondeat superior and direct negligence. *See, e.g., Lancaster,* 773 F.2d at 817–20. Under the theory of respondeat superior, an employer is liable for the intentional assaults committed by its employee in furtherance of the employer's business. *Copeland v. St. Louis-San Francisco Railway,* 291 F.2d 119, 121 (10th Cir.1961); *see also Lambert*

*v. Morania Oil Tanker Corp.*, 677 F.2d 245, 247–48 (2d Cir.1982) (Jones Act liability). Under the theory of direct negligence, an employer is liable if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct. *Harrison v. Missouri Pacific Railroad*, 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963) (per curiam).

At trial Bradford testified that criticizing and disciplining Taylor was necessary because of Taylor's poor work habits. This evidence suggests that Bradford may indeed have assaulted Taylor on a regular basis in furtherance of Burlington's interests. But that conclusion is for the jury to draw, *id.* at 249, and by refusing to give an instruction on the doctrine of respondeat superior, the district court abused its discretion. This error was harmless, however, because the judge instructed the jury on the alternative theory of direct negligence, and the jury found against Burlington anyway.

Burlington next contends that the district court erred in excluding evidence suggesting that Taylor had been exposed to hallucinogenic drugs that precipitated his mental collapse. Part of this evidence included: (1) testimony by Taylor's father that he told Portland Adventist Hospital at the time Stanley Taylor was first committed that he had received an anonymous telephone call in April 1981 informing him that "someone put acid in Stanley's glass"; (2) testimony by section laborers in Taylor's gang that a railroad worker was selling marijuana laced with phencyclidine, otherwise known as PCP, to section gang members at the time of Taylor's disappearance; and (3) evidence of a federal publication on PCP abuse along with expert testimony that Taylor's symptoms paralleled those of "PCP psychosis," a mental illness caused by the ingestion of PCP. Because the district court found no evidence that Taylor had actually ingested PCP, it excluded the proffered testimony as speculative and unduly prejudicial under Rule 403 of the Federal Rules of Evidence.

We review the district judge's evidentiary decisions only for an abuse of discretion, *Mitchell v. Keith*, 752 F.2d 385, 392 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); *Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1307 (9th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 259 (1983), and we do not find that the judge abused his discretion here. The testimony of Taylor's father regarding the telephone call is inadmissible hearsay and was properly excluded. Further, if the district court found that evidence of Taylor's ingestion of PCP or acid was only speculative and not connected to the evidence of Taylor's other drug use, the district court could have found that the testimony concerning PCP was substantially more prejudicial than probative.

Burlington further contends that the district court erred in excluding the testimony of Thomas Faulhaber, an insurance broker specializing in structured settlement annuities, on the issue of damages. Burlington sought to introduce Faulhaber's testimony to assist the jury in understanding the concept of present value. Faulhaber was prepared to testify to the costs of three structured annuity plans for a thirty-one year-old man based on a fixed yearly income stream of $26,000 for twenty-six and one-half or twenty-nine years, and to supplement those plans to take into account a four percent annual inflation rate. The district court excluded the testimony on two principal grounds. First, because Faulhaber was not qualified to testify on Taylor's economic loss, his opinion on the cost of various annuity plans would be irrelevant. Second, the jury might conclude that Taylor had to purchase an annuity, and the jury might therefore be misled.

The trial court has broad discretion in admitting and excluding expert testimony, and we will sustain the court's action unless it is manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Reno-West Coast Distribution Co. v. Mead Corp.*, 613 F.2d 722, 726 (9th Cir.),

*cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979); *see Jenkins v. Whittaker Corp.,* 785 F.2d 720, 729 (9th Cir. 1986) (district court did not abuse discretion in excluding expert testimony). There was no error here. At trial Burlington conceded that Faulhaber was not qualified to dispute Taylor's expert witness' version of economic loss, to dispute the present value arrived at by Taylor's expert, or to provide his own opinion concerning Taylor's economic loss. Although Burlington asserted that Faulhaber was prepared to supplement his testimony concerning annuity plans to take into account a four percent inflation rate, Faulhaber was not qualified to testify on the appropriate inflation rate, and there was no evidence in the record that a four percent inflation rate would be applicable in this case. The district court could therefore conclude, in its discretion, that Faulhaber's testimony was inadmissible. *See Diede v. Burlington Northern Railroad,* 772 F.2d 593, 596–97 (9th Cir.1985) (district court did not err in excluding testimony concerning nontaxability of railroad-purchased annuity).

 Burlington also argues that the district court erred in characterizing Taylor's ability to bid off the Vancouver section gang, where Bradford worked, and his failure to do so when Bradford began harassing him, as assumption of risk; the district court therefore barred Burlington's intended testimony on the subject. The defense of assumption of risk is not available in any case arising under the FELA for the recovery of damages for injuries resulting from an employer's negligence. *Tiller v. Atlantic Coast Line Railroad,* 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943); 45 U.S.C. § 54. Burlington consequently attempts to circumvent this rule by characterizing Taylor's reporting to work as contributory negligence, a defense which, as discussed above, is available to reduce the amount of damages under the FELA. 45 U.S.C. § 53. Burlington argues that the determination of whether Taylor's failure to bid off to another gang constituted assumption of risk or contributory negligence should have been made by the jury,

after receiving a cautionary instruction that if they classified his inaction as assumption of risk, they were to ignore it. We disagree.

 Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. *Owens v. Union Pacific Railroad,* 319 U.S. 715, 724, 63 S.Ct. 1271, 1276, 87 L.Ed. 1683 (1943); *see Tiller,* 318 U.S. at 58, 63 S.Ct. at 446. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. *See Prosser and Keeton on the Law of Torts* § 68, at 480–81 (W.P. Keeton 5th ed. 1984). Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *See id.* § 65, at 451–52. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. *Tiller,* 318 U.S. at 58, 63 S.Ct. at 446. By this reasoning, the employer's argument here must fail, for it is in essence an assumption of risk defense, not one based upon contributory negligence. The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.

 Here the employee simply reported to work under the person assigned; and though the supervisor was known to have a hostile disregard for the employee, it was not such an extraordinary situation that the employee is chargeable for refusing to demand other terms and conditions of supervision. His acts did not constitute con-

tributory negligence under the FELA. Reporting to work or facing the risks inherent in one's job is the essence of assumption of risk, *see Prosser and Keeton on the Law of Torts, supra,* § 68, at 480–88, though the failure to quit a job or to transfer to a different assignment might not constitute an assumption of the risk in a degree sufficient to bar recovery. *See Blair v. Baltimore & Ohio Railroad,* 323 U.S. 600, 605, 65 S.Ct. 545, 548, 89 L.Ed. 490 (1945).

■ The trial court did not err, as the Railroad here claims, in its refusal to submit to the jury the question whether the employee either assumed a risk or was contributorily negligent. The jury is generally told the legal rules that are relevant in a case, not those that are inapplicable. It seems to us unnecessary to instruct the jury on the meaning and definition of assumption of risk. The doctrine is relevant only to the extent we have discussed it here: to demonstrate as a matter of law that certain former defenses have been barred by the act of Congress.

Next, Burlington argues that the district court erred in denying its motion in limine to bar Taylor from seeking damages for lost wages and fringe benefits under the doctrine of election of remedies. In the case at bar, Taylor sought damages for lost wages on the ground that his mental breakdown rendered him incapable of working for the railroad. Union representatives had previously commenced suit on his behalf under the procedures of the National Railway Labor Act, 45 U.S.C. §§ 151–188 (1982) (NRLA), for lost wages and reinstatement, on the ground that he had been capable of working but had been wrongfully discharged; Taylor subsequently withdrew that action.

■ The doctrine of election of remedies is no longer strictly enforced in the federal courts. *See Quinn v. DiGiulian,* 739 F.2d 637, 644 (D.C.Cir.1984); *Bernstein v. United States,* 256 F.2d 697, 706 (10th Cir.1958) (doctrine is no longer applicable after adoption of Federal Rules of Civil Procedure), *cert. dismissed per stipulation,* 358 U.S. 924 (1959); 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1044, at 152 (1969). A plaintiff may prosecute actions on the same set of facts against the same defendant in different courts, even though the remedies the plaintiff seeks may be inconsistent. *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 69–70 (9th Cir.1956). But as soon as one of those actions reaches judgment, the other cases must be dismissed. *See id.* at 70. Since Taylor had withdrawn his action under the NRLA, and no judgment was rendered in that case, the district court properly denied Burlington's motion.

■ Finally, Burlington argues that the district court erred in overruling its objections to the form of a lengthy hypothetical question posed by Taylor's counsel to its medical expert during the trial. The witness was asked to assume a series of incidents evidencing Bradford's abusive conduct towards Taylor and was asked whether such incidents more probably than not contributed to Taylor's paranoid schizophrenia. Burlington contends that the district court should have sustained its objections to the hypothetical question because the question contained specific references to Taylor and Bradford, included a reference to an incident involving Bradford and a section member other than Taylor, and used several sexually explicit epithets.

■ There is a body of opinion, which we find persuasive, that is critical of permitting counsel to ask experts such hypothetical questions. *See* Fed.R.Evid. 705 (Notes of Advisory Committee on Proposed Rules). Indeed, Federal Rule of Evidence 705 largely eliminates the need for counsel to ask such questions, because the rule permits an expert to testify as to his opinion without counsel's providing him with a factual basis for it. Despite our criticisms, however, hypothetical questions have not been abolished. Further, the form of a hypothetical question is left to the broad discretion of the trial court. *Iconco v. Jensen Construction Co.,* 622 F.2d 1291, 1301 (8th Cir.1980). The ques-

tion must not require the expert to assume facts that are not in evidence. *Id.* Burlington does not allege that the question assumed facts not in evidence. Accordingly, we find that the district court did not abuse its discretion in permitting Taylor's counsel to propound the hypothetical question.

The judgment of the district court is REVERSED, and the case is REMANDED for a new trial.