960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re HAWAII FEDERAL ASBESTOS CASES.
Kenneth D. CAIN and Sophie Cain, Plaintiffs-Appellees,
v.
PITTSBURGH CORNING CORPORATION, et al., Defendants,
and
Owens-Corning Fiberglas Corporation, Defendant-Appellant.
Kenneth D. CAIN and Sophie Cain, Plaintiffs-Appellees,
v.
PITTSBURGH CORNING CORPORATION, et al., Defendants,
and
Owens-Illinois, Inc., Defendant-Appellant.
 Nos. 90-16668, 90-16802, 90-16669, 90-16803.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1992.
Decided April 20, 1992.
 
 Before SCHROEDER, REINHARDT and KLEINFELD, Circuit Judges.
 
 
 1
 Memorandum*
 
 
 2
 Appellee Kenneth Cain contracted mesothelioma, an asbestos related cancer, and sued various insulation manufacturers and distributors, including appellants Owens-Illinois, Inc. ("O-I") and Owens-Corning Fiberglas Corporation ("OCF"), for exposing him to asbestos. The other defendants settled prior to trial. The jury awarded Cain $5,370,400 in general and special damages. The defendants appeal on the grounds that: (a) the trial was not bifurcated; (b) the trial judge gave various erroneous jury instructions; (c) substantial evidence did not support the verdict; (d) the defendants were entitled to a remittitur; and (e) the district court erroneously awarded prejudgment interest on future economic losses.
 
 
 3
 Between December 1953 and the spring of 1954, Cain worked as an insulator helper at National Petro where he was exposed to Kaylo, an insulator containing asbestos. Kaylo was manufactured by O-I between 1948 and 1958, and distributed by OCF since 1953. Cain then worked as a process mechanic from 1954 to 1962 at the National Petro power plant. Another insulator helper at that plant testified that 85% of the insulation used there was also Kaylo. Cain continued to work as an insulator with exposure to asbestos until retirement approximately twenty years later. In July 1989, Cain was diagnosed with malignant mesothelioma, a fatal disease associated with exposure to asbestos.
 
 
 4
 On July 19, 1989, Cain filed suit against a number of companies that manufactured or distributed various insulation products containing asbestos. Cain settled with all the defendants except OCF and O-I. On June 8, 1990, the jury awarded Cain $5,000,000 in general damages and $370,400 in special damages. Pursuant to the Hawaii Uniform Contribution Among Tortfeasors Act ("UCATA"), Haw.Rev.Stat. §§ 663-11-17, the jury apportioned 26% of the liability to OCF and 22% to O-I. The total damages award of $5,370,400 was reduced by the settlements paid to the Cains by other parties to $3,054,648, to which $312,159.91 prejudgment interest was added, resulting in a judgment against OCF and O-I of $3,366,807.91. OCF moved for JNOV, and both defendants moved for a new trial or, in the alternative, remittitur. Cain moved for prejudgment interest. On September 26, 1990, the district judge denied the defendants' motions and granted Cain's motion. Defendants now appeal.
 
 
 5
 In a pretrial order, the district judge ordered bifurcation of the issue of punitive damages. During trial, however, he determined that the issues should be tried together. The defendants argue that the trial judge's "last minute" decision severely prejudiced them by allowing "conduct related" evidence into the calculation of the compensatory award.
 
 
 6
 The district court's decision whether to bifurcate a trial is reviewed for abuse of discretion. Airlift Int'l v. McDonnell Douglas Corp., 685 F.2d 267, 269 (9th Cir.1982). Cases are ordinarily tried in a single trial, unless the trial court exercises discretion to bifurcate. Federal Rule of Civil Procedure 42(b). The most common reason for bifurcating is to exclude evidence of the defendant's wealth or net worth from the compensatory damages phase, but no information relating to the defendants' net worth was introduced at trial. The district court instructed the jury on the differences between compensatory and punitive damages, and the jury's decision not to award punitive damages shows that the jury found that the grounds for punitive damages were not established. The jury's decision not to award punitive damages suggests that it was not moved by passion or prejudice, did not inflate compensatory amounts for punitive purposes, and was not moved by any evidence that came in solely for its relevance to punitive damages. The reasonableness of the defendants' conduct was put at issue by the negligence count, so evidence of absence of reasonable care could come in with or without punitive damages. The defendants have not demonstrated any prejudice from the timing of the judge's reversal of his pretrial decision.
 
 
 7
 Defendants' challenge to the burden of proof instruction is not well taken. The trial court instructed the jury that the defendants bore the burden of proving that any of the other settling asbestos companies were liable to Cain and were a legal cause of his injuries. This was correct. Commonly in multiple defendant personal injury cases, those defendants left in the case at trial seek to blame the "empty chairs" of the settled-out defendants. Hawaii follows the Restatement rule, placing the burden on the defendant asserting the empty chair defense to prove that some particular share of the liability should be apportioned by the jury to the empty chair:
 
 
 8
 (2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.
 
 
 9
 § 433B of the Restatement (Second) of Torts, cited with approval in Collins v. Greenstein, 595 P.2d 275, 283 n. 10 (Haw.1979). In the somewhat analogous issue of market share liability, the court again approved this provision of the Restatement, and therefore left it to defendants "to rebut this presumption [of equal share] and thereby reduce their potential liability." Smith v. Cutter Biological, Inc., 823 P.2d 717, at 725, 729 (Haw.1991).
 
 
 10
 Defendants' reliance on Velazquez v. National Presto Indus., 884 F.2d 492 (9th Cir.1989), is misplaced. In Velazquez, the lawsuit began as a products liability claim by three soldiers injured by defective ammunition, but the soldiers had settled out entirely, and the case on appeal was just between one joint tortfeasor manufacturer and another. The defending manufacturer in this contribution claim had already admitted that it was a joint tortfeasor, so the court held that it owed an equal share unless it could prove levels of fault so disproportionate as to require adjustment. The statute provides that contribution is equal unless "there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution," Haw.Rev.Stat. § 663-12, and provides that "[a]s among joint tortfeasors" the proportions must be litigated "between them." Haw.Rev.Stat. § 663-17(c). This statutory language imposes on the joint tortfeasors, not the tort victim, the burden of proving proportionate shares. The words "between them" mean that this litigation is the burden of the joint tortfeasors, not the tort victim. Pretrial Order No. 4, dated June 8, 1985, did no more than make the settling asbestos companies nominal parties for purposes of contribution litigation among the asbestos companies. Hawaii has recently abolished joint and several liability among joint tortfeasors in various circumstances, Haw.Rev.Stat. § 663-10.9, and in certain circumstances imposed on plaintiffs the burden of proving degree of negligence, Haw.Rev.Stat. § 663-10.9(3). But this statute has an exception for "asbestos-related torts." Haw.Rev.Stat. § 663-10.9(2)(C). Thus it does not help the asbestos companies in this case.
 
 
 11
 Defendants claim that they were entitled to a curative instruction, because Cain and his economist testified that he needed to work, despite his illness, because of the financial burden of his medical bills, when actually his settlements with other asbestos companies were so ample that this testimony must have been false. The district court's instructions are reviewed for abuse of discretion, and the general instruction on credibility of witnesses was sufficient. If Cain misled the jury about his ability to pay medical bills, then he opened the door to impeachment, and it was up to the defense to impeach. It would rarely be appropriate for the court to instruct the jury that the plaintiff had misled them. To the extent that the jury might have been confused about the effect if any to give to Cain's financial status, the confusion would have been cured by the instruction which the court did give, "a jury must not consider a plaintiff's net worth or lack thereof and must disregard any evidence which may suggest the financial condition of a plaintiff."
 
 
 12
 OCF claims that the district court erred by failing to give a state of the art instruction. This refers to whether, in light of the state of scientific knowledge when the product was sold, the manufacturer could or should have known of its dangerousness. Under Hawaii law, state of the art is relevant to a negligence claim but not to a strict liability claim. Johnson v. Raybestos-Manhattan, Inc., 740 P.2d 548 (Haw.1987). This rule of Hawaii tort law implies that even if OCF preserved the issue by properly offering a state of the art instruction directed toward the negligence theory, and even if the trial court erred when it determined that the general foreseeability instruction sufficed, nevertheless the error would necessarily be without prejudice, because the jury found OCF strictly liable. See In re Asbestos Cases, 847 F.2d 523, 524-26 (9th Cir.1988).
 
 
 13
 Defendants question the underlined portion of this instruction, which the trial court gave the jury:
 
 
 14
 General damages are those which will fairly and adequately compensate Mr. Cain for the physical injuries sustained by him and for any disability, pain, suffering, discomfort, fears, anxiety, and other mental or emotional distress, if any, suffered by Mr. Cain and legally resulting from the injuries in question and the loss of his enjoyment of life.
 
 
 15
 The relevant Hawaii statute provides for damages for "pain and suffering, ... loss of enjoyment of life" and other losses. Haw.Rev.Stat. § 663-8.5. The instruction was correct.
 
 
 16
 OCF appeals the denial of its motion for directed verdict and judgment notwithstanding the verdict, on the theory that its asbestos could not have caused Cain's illness because OCF was not in the asbestos business until after Cain's exposure ended. The verdict must stand, unless viewing all the evidence most favorably to Cain, and drawing all reasonable inferences in favor of Cain, the only reasonable conclusion a jury could draw would be in favor of OCF. Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). Cain stated that he worked at the powerhouse at the National Petro Chemical plant from 1954 to July 1962. At trial, another insulator testified that 85% of the asbestos thermal insulation there was Kaylo, which OCF admittedly manufactured. Additionally, Cain introduced invoices from OCF to the National Petro Chemical plant during years Cain worked there. A reasonable jury could infer that Cain was exposed to OCF's product.
 
 
 17
 Defendants claim that plaintiff's economist, Albert Fitzpatrick, should not have been permitted to testify, because he projected wage losses even though Cain had retired before he got sick, used a work life expectancy which did not take into account Cain's imminent death from mesothelioma, failed to offset Cain's own consumption against future wage loss, and added in a value for home handyman services without adequate foundation. We must affirm the district judge's decision to admit expert testimony unless manifestly erroneous. Taylor v. Burlington N. Ry., 787 F.2d 1309, 1315 (9th Cir.1986). Cain testified that at the time of the onset of the mesothelioma, he had looked at a newspaper classified advertisement and had gotten in touch with the union about getting work, and that as he was running out of money, he planned to seek work. While skeptics might doubt that Cain really would have gone back to work except for his illness, reasonable jurors could believe it, so it was up to the jury. Of course, the asbestos companies were not entitled to a shorter work life expectancy based on the life-shortening effects of their own tortious conduct. The trial court instructed the jury to reduce wage loss by personal maintenance expenses, and the jurors had evidence for figures with which they could make the reduction. Although the district court might have also been within its permissible scope of discretion had it excluded Fitzpatrick's testimony, because of the failure to reduce for personal maintenance expenses, the court could reasonably have weighed this against the curative effect of the jury instruction requiring an offset, the opportunity of the defense to challenge by argument and countervailing testimony, and the risk that Cain would not be alive if trial were delayed until his economist could appear. Since there was some foundation for Fitzpatrick's testimony, the district judge did not abuse his discretion in allowing it. The remedies for defects and weaknesses in Fitzpatrick's foundation and the inferences he drew were cross examination, and defense economics testimony, both of which were put before the jury, as well as the jury instructions.
 
 
 18
 Defendants claim error in failing to grant a remittitur or new trial, because the general damages award of five million dollars was excessive, and the specials exceeded the amount for which there was any evidence. We evaluate the verdict under the "maximum recovery rule." This court will sustain a verdict if it does not exceed the "maximum amount sustainable by the probative evidence." Los Angeles Memorial Coliseum Comm. v. National Football League, 791 F.2d 1356, 1366 (9th Cir.1986), cert. denied, 484 U.S. 826 (1987). The verdict seems high, and reasonable lawyers evaluating this case prior to the verdict, based on broad experience, might well have estimated the value of the case at a much lower figure. But the general run of verdicts includes a few unusually high verdicts as well as a few unusually low ones, and this one was not so far from the norm as to exceed the maximum amount sustainable by the probative evidence. The asbestos companies cited three verdicts under a million dollars as comparables, but besides being too few in number to prove that Cain's verdict was extraordinarily high, these are distinguishable. The most important distinction, from a practical trial point of view, was probably that the plaintiffs were dead when the other cases went to trial, so the jury had no future period over which to project pain and suffering. Other distinctions might be Cain's younger age than two of the three other plaintiffs and his greater pain of longer duration. The other verdicts might have been low, because the tort victims were dead so the jury could not cause money to be transferred to them, rather than Cain's figure being high. Cain's case might have benefitted, compared to the others, from the fact that the star witness was alive to testify.
 
 
 19
 The $370,400 in specials suggests that the jury accepted virtually all Cain's evidence, and rejected all attacks and qualifications urged by the defense. The defense offered persuasive attacks on Cain's economist's failure to reduce wage loss for personal maintenance expense and his high figure for loss of home maintenance services, but the jury evidently was unpersuaded. Nevertheless, the jury decides upon the damages amount, not us. We must reconcile the special verdict on any reasonable theory consistent with the evidence. Carvalho v. Johns-Manville, 871 F.2d 891, 894 (9th Cir.1989). For all we know, the jury rejected some of Cain's own approaches to calculating his losses and used its own more generous method. The jury might have projected a survival date for Cain that would reconcile its wage loss determination with the jury instruction on subtracting personal maintenance after date of death, and might have increased his future medical expenses above Cain's own projection by assuming a longer life expectancy than Cain's witnesses did. In any event, the figure does not exceed the maximum amount sustainable by the probative evidence.
 
 
 20
 Defendants claim that the trial court erroneously awarded prejudgment interest on amounts for future rather than past losses. The district judge correctly noted that the verdict did not break out awards for lost future earnings from other portions of the specials, so it was not possible rationally to award prejudgment interest on only part and not all of the verdict. Defendants had not requested a verdict form which would break out the damages to separate future amounts. Haw.Rev.Stat. § 636-16 gives the trial judge discretion to designate a commencement date, as early as the date when the injury first occurred, for awarding prejudgment interest to plaintiffs. Wiegand v. Colbert, 718 P.2d 1080 (Haw.1986), likewise rejected a challenge to an award of prejudgment interest on damages which likely included amounts for future as well as past losses where there was no separation of amounts awarded for future losses. The district court correctly applied Wiegand.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3