
DA 10-0035

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 235

PATRICK CHEFF,

      Plaintiff and Appellee,

  v.

BNSF RAILWAY COMPANY, a Corporation,

      Defendant and Appellant.

APPEAL FROM:      District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDV 08-1121
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Randy J. Cox and Scott M. Stearns, Boone Karlberg P.C., Missoula, Montana

      For Appellee:

            Terry N. Trieweiler, Trieweiler Law Firm, Whitefish, Montana
James T. Towe, Towe Law Offices, Missoula, Montana

                    Submitted on Briefs:  August 10, 2010

                              Decided:  November 3, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The Eighth Judicial District Court, Cascade County, granted Patrick Cheff's (Cheff) cross-motion for summary judgment, setting aside the settlement and release agreement ("Release") entered into between Cheff and Burlington Northern Santa Fe Railway Company (BNSF) upon grounds of mutual mistake of material fact, constructive fraud in the inducement, and lack of consideration. BNSF appeals the court's invalidation of the Release. BNSF also appeals the court's ruling prohibiting the use of statements contained in medical records to cross-examine Cheff about how he was injured. Finally, BNSF appeals the court's denial of an interest offset against the judgment. We affirm.

¶2 Cheff cross-appeals the court's submission of the issue of contributory negligence to the jury. Cheff also cross-appeals the court's $300,000 offset against the judgment. We affirm.

## BACKGROUND

¶3 On January 14, 2006, Cheff, a conductor for BNSF, slipped and fell on an icy and snow-packed walkway while entering the locker area on BNSF's Whitefish, Montana, railyard and injured his back. No one witnessed Cheff's fall. Shortly after, Cheff reported his fall to a co-worker and his supervisor, Doug Schuch, but he did not submit an injury report at the time.

¶4 On January 27, 2006, Cheff was examined by orthopedic surgeon Dr. David Sobba, who requested that Cheff undergo an MRI. Dr. Sobba concluded Cheff had herniated discs in his lower back and congenital stenosis with short pedicles. Dr. Sobba recommended

2

conservative treatment, including physical therapy and anti-inflammatory medication. Some notes taken by medical personnel refer to weightlifting as a potential cause of Cheff's lower back injury, while other notes refer to an occupational injury or a slip and fall.

¶5 When conservative treatment proved unsuccessful, Cheff was referred to Kalispell neurosurgeon Dr. Robert Hollis and examined in June 2006. Dr. Hollis's physician's assistant advised Cheff that surgery was necessary to prevent further nerve damage. On June 15, 2006, Cheff turned in an injury report to BNSF regarding his back injury. Five days later, Cheff met with Dr. Hollis, and surgery was scheduled for June 30.

*A. Release*

¶6 On June 21 and 22, 2006, Cheff met with BNSF claims manager Gregg Keller. Keller interviewed Cheff and the two visited the scene of Cheff's fall. Keller told Cheff that if he settled his claim for $300,000 and entered into the Release, BNSF would extend his medical coverage to January 1, 2010. Cheff was not aware, nor advised, that he had a right, pursuant to BNSF policy, to extended medical coverage beyond termination of employment. Cheff executed the Release on June 22.

¶7 After signing the Release, Cheff cancelled his surgery, but he continued to see Dr. Hollis. In early 2007, following a third MRI ordered in anticipation of re-scheduling surgery, Dr. Hollis advised Cheff that he was no longer a candidate for surgery due to a newly discovered pre-existing spinal condition. While surgery remained an option, it was of a different nature than initially planned and only appropriate in an emergency situation.

3

¶8      In August 2008, Cheff filed suit against BNSF pursuant to 45 U.S.C. §§ 51-60 (2006), Federal Employers Liability Act (FELA), to recover damages for the lower back injury he had allegedly suffered when he fell on the BNSF walkway. Cheff alleged the Release he had executed was void for lack of consideration, mutual mistake, and fraudulent inducement. Both parties moved for summary judgment on the issue.

¶9      The District Court invalidated the Release upon several independent grounds. The court concluded the parties were mutually mistaken regarding the nature and extent of Cheff's injury:

> Although the parties were fully aware of a diagnosed L-3/L-4 herniation and resulting permanent disability, they were not aware of the long-term extent of the injury as a result of [Cheff's] then-unknown preexisting spinal condition that would preclude the mutually contemplated corrective fusion/decompression surgery, thus compounding the long-term extent and consequence of the injury beyond the contemplation of the parties.

¶10     The court also concluded that BNSF had committed constructive fraud in the inducement because BNSF claims agent Keller had made material misrepresentations that Cheff's medical coverage would be extended until January 1, 2010, only if he entered into the Release. Finally, the court concluded the Release lacked consideration because, while extended medical coverage was bargained for under the Release, Cheff already had a right to receive continued medical coverage under BNSF policy. On appeal, BNSF argues that no mutual mistake of fact existed as to the nature of the injury; actual intent to deceive is required to invalidate the Release on fraud grounds; and, the $300,000 paid to Cheff under the Release constitutes adequate consideration.

4

*B. Medical Records*

¶11    Prior to trial, Cheff moved in limine to exclude any medical records that referred to events other than his fall as a cause(s) of his injury.  He asserted that such medical records lacked foundation and expert testimony, which, he argued, is required to apportion damages.  The District Court granted Cheff's motion, reasoning that both apportionment and proof of causation required expert testimony; BNSF had not disclosed an expert; and, the court had broad discretion to prevent unfairness created by insufficient disclosure.  In addition, the court found that such evidence could not be used for the sole purpose of impeaching Cheff's claim.  On appeal, BNSF argues that it sought to use the evidence to show Cheff's injury did not arise from the slip and fall, that expert testimony is not required to challenge causation, and that the evidence should have been admitted to challenge the credibility of the sole witness to the accident.

*C. Contributory Negligence*

¶12    At trial, Cheff moved for judgment as a matter of law on the issue of contributory negligence.  The District Court denied his motion, and the jury found Cheff fifteen percent negligent.  Cheff cross-appeals on the basis that no act or omission existed upon which the jury could base its finding.

*D. Judgment Offsets*

¶13    The jury returned a verdict in favor of Cheff in the amount of $1.6 million, which was reduced by $240,000 due to Cheff's contributory negligence.  BNSF moved to offset the damage award by the $300,000 it had paid Cheff pursuant to the Release, plus interest.  The

5

District Court granted the $300,000 offset but denied interest. Cheff cross-appeals, arguing that permitting an offset was inappropriate because BNSF did not meet its burden in establishing that the $300,000 and verdict were for the same damages. BNSF appeals the denial of the interest offset.

¶14 BNSF raises the following issues on appeal:

¶15 Issue 1: Did the District Court err in setting aside the Release?

¶16 Issue 2: Did the District Court err in prohibiting BNSF from using statements contained in medical records to impeach Cheff about how he injured his back?

¶17 Issue 3: Did the District Court err in denying BNSF an interest offset on the settlement proceeds it paid pursuant to the Release that was later invalidated?

¶18 Cheff raises the following issues on cross-appeal:

¶19 Issue 4: Did the District Court properly submit the issue of contributory negligence to the jury?

¶20 Issue 5: Did the District Court err in offsetting Cheff's damage award by the $300,000 that was previously paid pursuant to the Release?

**STANDARD OF REVIEW**

¶21 This Court reviews a district court's grant or denial of a motion for summary judgment de novo, applying the same criteria set forth in M. R. Civ. P. 56. *Sinclair v. Burlington N. & Santa Fe Ry. Co.*, 2008 MT 424, ¶ 26, 347 Mont. 395, 200 P.3d 46. The moving party has the burden of demonstrating the absence of genuine issues of material fact

6

and entitlement to judgment as a matter of law. *Id.* Once the moving party has met its burden, the opposing party must present substantial evidence, as opposed to mere denial, speculation, or conclusory statements, to raise a genuine issue of material fact. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 13, 344 Mont. 540, 189 P.3d 615. The district court's determination that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law is a conclusion of law, which we review for correctness. *Sinclair*, ¶ 26.

¶22 A district court's evidentiary ruling is reviewed under an abuse of discretion standard. The district court has broad discretion in determining the admissibility of evidence. *Olson v. Shumaker Trucking & Excavating Contractors, Inc.*, 2008 MT 378, ¶ 22, 347 Mont. 1, 196 P.3d 1265.

¶23 Our standard of review for the denial of a motion for a new trial is whether the district court manifestly abused its discretion. *Bailey v. Beartooth Commun. Co.*, 2004 MT 128, ¶ 10, 321 Mont. 305, 92 P.3d 1.

¶24 A district court's decision to deny a motion for judgment as a matter of law is reviewed de novo. *Tucker v. Farmers Ins. Exch.*, 2009 MT 247, ¶ 23, 351 Mont. 448, 215 P.3d 1.

¶25 Judgment offsets are conclusions of law, which we review de novo. *Id.*

**DISCUSSION**

¶26 *Issue One: Did the District Court err in setting aside the Release?*

7

¶27 Whether a FELA release is valid is a federal question that must be determined by federal law. *Bevacqua v. Union P. R.R. Co.*, 1998 MT 120, ¶ 70, 289 Mont. 36, 960 P.2d 273 (citing *Wilson v. CSX Transp., Inc.*, 83 F.3d 742, 745 (6th Cir. 1996)). The party challenging the release has the burden of establishing its invalidity. *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630, 68 S. Ct. 296, 298 (1948). A FELA release may be set aside on several independent grounds, including fraud, lack of consideration, and mutual mistake. *Counts v. Burlington N. R.R. Co.*, 952 F.2d 1136, 1142 (9th Cir. 1991). Under FELA, a mutual mistake of fact may invalidate a release only when both parties hold a mistaken belief pertaining to the nature of the injury. *Bevacqua*, ¶ 70 (citing *Wilson*, 83 F.3d at 745). "[A] settlement made without regard to an undisclosed physical condition cannot stand because 'the settlement intended by both the parties was for the injuries and damages disclosed and then known by the parties.' " *Graham v. Atchison, T. & S.F. Ry. Co.*, 176 F.2d 819, 825 (9th Cir. 1949) (quoting *S.W. Pump & Mach. Co. v. Jones*, 87 F.2d 879, 881 (8th Cir. 1937)).

¶28 BNSF argues that the parties had an accurate understanding of the nature of Cheff's injury at the time they entered the Release and that the only mistake alleged is that Cheff intended to have surgery, but, as yet, has not. BNSF's oversimplification of Cheff's injury is incorrect. When the parties executed the Release, they were aware of an L-3/L-4 herniation in Cheff's back and resulting permanent disability. They also believed that on June 30, Cheff would undergo a simple surgery to benefit his back. However, upon pre-surgery reimaging and review, which occurred after the Release was signed, Dr. Hollis discovered Cheff's pre-existing spinal condition, which precluded the surgery.

8

¶29 With surgery off the table, the extent and consequences of Cheff's injury have increased beyond that which were originally contemplated by the parties when they executed the Release. Neither party was aware of Cheff's undisclosed, pre-existing spinal condition when they executed the Release; therefore, it is invalid. Because we affirm the District Court on the grounds of mutual mistake, we need not address constructive fraud or lack of consideration.

¶30 *Issue Two: Did the District Court err in prohibiting BNSF from using statements contained in medical records to impeach Cheff about how he injured his back?*

¶31 Through Cheff, BNSF sought to introduce into evidence three separate medical records: (1) a note taken by Dr. David Sobba on January 27, 2006 ("[Cheff] has been having problems with his back for about three weeks. He thinks that he may have slipped that has caused this to kind of come on."); (2) a note taken when Cheff underwent an MRI on February 2, 2006 ("Low back pain radiating to left leg intermittently for years, increasing following weightlifting three weeks ago."); and, (3) a note taken by physical therapist Jay Shaver on February 6, 2006 ("[Cheff] referred to physical therapy with complaints of substantial leg and back pain approximately 1 month ago. [Cheff] states insidious onset from weightlifting without a belt on. [Cheff] denies any previous back injuries.").

¶32 The District Court, applying *Truman v. Eleventh Jud. Dist. Ct.*, 2003 MT 91, ¶ 32, 315 Mont. 165, 68 P.3d 645 (holding a defendant must prove, by a reasonable medical probability, that a plaintiff's injury is divisible before he or she may introduce evidence of contributing causes of a plaintiff's injury), concluded that BNSF could not introduce the

9

medical records as affirmative evidence of a contributing or alternate cause of injury because BNSF had not proved, to a reasonable medical certainty or probability, that Cheff's alleged weightlifting injuries were either a distinctly apportionable contributing cause or independent alternate cause of his claimed injuries.

¶33 BNSF argued *Truman* did not apply because BNSF was introducing the medical records to establish alternate causation, not to apportion liability. Additionally, BNSF argued that it was entitled to use the medical records to impeach Cheff at trial. The District Court determined *Truman* applied and concluded that evidence of Cheff's alleged weightlifting injury was inadmissible for impeachment purposes as well, absent a divisible injury.

¶34 The morning of trial, BNSF filed a point brief, requesting that the District Court reconsider its order concerning the medical records. BNSF cited testimony from Dr. Hollis's perpetuation deposition taken eleven days earlier, where Dr. Hollis was questioned regarding whether he knew of the weightlifting references in Cheff's medical history. Dr. Hollis stated that he was unaware of those references and that weightlifting could be a possible cause of a herniated disc injury, but that without discussing the matter further with Cheff, his opinion regarding the cause of Cheff's injury had not changed. In a subsequent offer of proof during trial, BNSF renewed its request to use the medical records to cross-examine Cheff. The District Court disallowed the evidence in both instances.

¶35 After the jury returned its verdict, BNSF filed a motion for a new trial, alleging the exclusion of the medical records deprived BNSF of a fair trial and prevented it from

10

demonstrating alternate cause, cross-examining experts, and casting doubt upon Cheff's version of the events. The District Court reaffirmed its previous rulings regarding alternate cause and impeachment and denied BNSF's request.

¶36 The plaintiff has the burden of establishing causation. *Faulconbridge v. State*, 2006 MT 198, ¶ 77, 333 Mont. 186, 142 P.3d 777. A defendant "may submit evidence of other injuries to negate allegations that he or she is the cause or sole cause of the current injury, subject to the trial court's application of traditional evidentiary considerations." *Clark v. Bell*, 2009 MT 390, ¶ 25, 353 Mont. 331, 220 P.3d 650. Or, a defendant may attempt to prove he or she is liable only for a portion of the plaintiff's damages by proving "by a reasonable medical probability, that the injury is divisible." *Truman*, ¶ 32. Thus, only where a defendant seeks to apportion an injury, as opposed to rebut causation, does he or she have to prove to a reasonable medical probability that the injury is divisible. *Clark*, ¶ 23.

¶37 Here, BNSF did not seek to apportion Cheff's injuries, but, rather, asserted a lack of causation and denied *all* liability for Cheff's injury. Therefore, the District Court erred in applying *Truman* to prohibit BNSF from introducing the medical records as evidence of alternate cause and, consequently, impeachment evidence. However, as the record otherwise supports the exclusion of the medical records, we will uphold the District Court's decision. *See Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275 (We will not reverse a district court where it reached the right result, although for the wrong reason.).

11

¶38 BNSF intended to offer the records into evidence via cross-examination of Cheff, although Cheff did not prepare the medical records and disputed their accuracy. Cheff argued the records lacked foundation and constituted inadmissible hearsay.

¶39 Cheff's foundation argument is decisive. BNSF never sought to establish any evidentiary foundation from any of the authors of the records, but consistently argued it intended to offer the records only through Cheff. However, these records are not Cheff's own prior inconsistent statements and, therefore, are not admissible through him. M. R. Evid. 613. In addition, we have held that medical records are not ordinarily self-authenticating and require proper foundation before they are admissible. *Palmer v. Farmers Ins. Exch.*, 233 Mont. 515, 521, 761 P.2d 401, 405 (1988); *see* M. R. Evid. 902.

¶40 In *Palmer*, the plaintiff offered three exhibits into evidence without calling the professionals who prepared the exhibits: an emergency room report, a hospital dismissal form, and an ambulance report. The district court admitted the records pursuant to M. R. Evid. 803(6)—over the defendant's objection that they lacked foundation. Although the records would have ordinarily required foundation, we affirmed the court because the defense had already stipulated to their authenticity. *Palmer*, 233 Mont. at 521-22, 761 P.2d at 405-06.

¶41 Here, Cheff never stipulated to the authenticity of the medical records and actually disputed their accuracy. BNSF could not lay the requisite foundation for the records through cross-examination of Cheff and failed to lay foundation through the testimony of the medical personnel who actually prepared the records.

12

¶42 Further, BNSF argues on appeal that it should have been permitted to introduce into evidence the portion of Dr. Hollis's deposition where BNSF cross-examined him about the medical records. M. R. Evid. 703 permits an expert to base his or her opinion on inadmissible facts or data, if the facts or data are of a type reasonably relied upon by experts in the field in forming opinions on that subject. Additionally, M. R. Evid. 705 addresses disclosure of facts or data underlying an expert opinion, providing that "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." Both rules, however, are subject to relevancy considerations, and "[t]his Court has consistently held that 'the question of admissibility of evidence must in every case be left largely to the sound discretion of the trial court, subject to review only in case[s] of manifest abuse.' " *State v. Van Dyken*, 242 Mont. 415, 428, 791 P.2d 1350, 1358 (1990) (citations omitted).

¶43 Because Cheff denied the accuracy of the medical records; because they lacked foundation demonstrating their accuracy; and, because Dr. Hollis's opinion regarding Cheff's injury did not change upon being advised of the weightlifting references in the medical records, any possible error in refusing to admit that portion of Dr. Hollis's deposition does not amount to a manifest abuse of discretion.

¶44 *Issue Three: Did the District Court err in denying BNSF an interest offset on the settlement proceeds it paid pursuant to the Release that was later invalidated?*

¶45 BNSF, relying on non-FELA Montana case law, argues that the District Court erred in denying an interest offset on the settlement proceeds paid to Cheff. However, federal law, not state law, governs the measure of damages in a FELA action. *Monessen S.W. Ry. Co. v.*

13

*Morgan*, 486 U.S. 330, 335, 108 S. Ct. 1837, 1842 (1988). Normally, prejudgment interest is part of the actual damages recovered by a plaintiff. *Id*. FELA does not specifically address prejudgment interest. *Id*. at 336, 108 S. Ct. at 1843. However, for decades, federal and state courts have unanimously held that prejudgment interest is not allowed under FELA. Congress has never disturbed this judicial interpretation. *Id*. at 337-39, 108 S. Ct. at 1843-44. Therefore, because FELA does not permit prejudgment interest to Cheff, it follows that a prejudgment interest offset is not available to BNSF. We affirm the District Court.

¶46 *Issue Four: Did the District Court properly submit the issue of contributory negligence to the jury?*

¶47 At trial and after the defense had rested its case, Cheff moved for judgment as a matter of law on contributory negligence, arguing that while Cheff may have assumed the risk in encountering a dangerous condition at work, there was no evidence that he was contributorily negligent. The District Court denied Cheff's motion, reasoning that Cheff may have added new danger to the risk by unreasonably failing to apprehend or consider the risk of walking on the icy, snowy walkway by not avoiding or traversing it in a reasonably safe manner.

¶48 An employee is entitled to recover damages under FELA as long as his or her employer's negligence played any role in producing his or her injuries. *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1313 (9th Cir. 1986). Damages are reduced to the extent the employee was contributorily negligent. *Id*. at 1314. The jury decides how much of an

14

employee's injury is attributable to his or her own actions "if there is *any* evidence at all of contributory negligence." *Id.* (emphasis added).

¶49     While FELA has abolished the common law defense of assumption of the risk, contributory negligence remains a valid defense. *Id.* at 1316; *Kalanick v. Burlington N.R.R. Co.*, 242 Mont. 45, 50, 788 P.2d 901, 904 (1990). "[A]n employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk." *Taylor*, 787 F.2d at 1316. In contrast, "[c]ontributory negligence . . . is a careless act or omission on the [employee's] part tending to add new dangers to conditions that the employer negligently created or permitted to exist." *Id.*

¶50     Here, Cheff's decision to walk on a narrow, snowy and slushy walkway to the BNSF locker area was not necessary for him to perform his job duties; instead, he could have selected another alternative entrance, such as the main entrance. As the District Court found, it is conceivable that Cheff added new dangers to the snowy and slushy walkway by not apprehending or considering the risk of using this walkway, as opposed to using one of the two other alternative routes, or by not traversing the walkway in a reasonably safe manner. Because some evidence existed that Cheff's injury was attributable in part to his own actions, the issue of contributory negligence was properly submitted to the jury. We affirm.

¶51     *Issue Five:  Did the District Court err in offsetting Cheff's damages award by the $300,000 that was previously paid pursuant to the Release?*

15

¶52 On cross-appeal, Cheff argues that the District Court erred in granting the $300,000 offset against the jury's verdict because BNSF failed to establish the settlement amount was for the same damages awarded by the jury.

¶53 Where a release is executed and later invalidated, the sum paid pursuant to the release "shall be deducted from *any* award determined to be due to the injured employee." *Hogue v. S. Ry. Co.*, 390 U.S. 516, 518, 88 S. Ct. 1150, 1152 (1968) (emphasis added).

¶54 BNSF is entitled to the $300,000 offset against the judgment. Although Cheff argues that the broad language of the Release requires a showing of apportionment before an offset can be granted, the record clearly indicates that the subject of the jury verdict and the subject of the Release were the same—a work-related slip and fall injury. We affirm.

## CONCLUSION

¶55 The District Court did not err in invalidating the Release on grounds of mutual mistake. Nor did the court err in excluding the medical records. The court properly deducted the amount paid under the Release from the judgment and correctly denied the interest offset. Finally, the issue of contributory negligence was appropriately submitted to the jury.

¶56 We affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ BRIAN MORRIS

16

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART