Billy J. CONLEY, Appellant,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,**
Respondent.

No. WD 39857.

Missouri Court of Appeals,
Western District.

Nov. 29, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Jan. 31, 1989.

Application to Transfer Denied
March 14, 1989.

Robert L. Shirkey, James M. Slone, Kansas City, for appellant.

Spencer J. Brown, Thomas M. Deacy, Kansas City, for respondent.

Before KENNEDY, C.J., and TURNAGE and BERREY, JJ.

KENNEDY, Chief Judge.

Plaintiff Billy J. Conley appeals from a judgment of the trial court by which he was awarded $200,000 damages in a Federal Employers Liability Act claim against his employer Burlington Northern. His injuries consisted of aggravation of an earlier ankle sprain, the aggravation resulting from defendant's alleged negligence in (quoting from his verdict-directing instruction) "assign(ing) plaintiff to work which defendant in the exercise of ordinary care should have known would aggravate plaintiff's ankle condition".

Conley claims that the trial court erred in submitting to the jury his contributory negligence in "fail(ing) to report to defendant that his work assignments were causing pain in his ankle."

The facts:

Plaintiff while going about his work as a special agent for the railroad on November 17, 1979, twisted his ankle. This injury is not the basis of the lawsuit; the lawsuit is based upon the subsequent aggravation of this injury by the railroad's work demands upon him. Plaintiff's regular work of surveillance of railroad equipment and cargo called for him to walk about the railroad yards, often on rough and uneven surfaces, and to climb on to railroad cars. He was on the night shift at least a part of the time in question. His evidence was that the ankle was causing him pain as he performed the duties of his employment; that he complained of this to his superiors; that he limped; and that his superiors knew of his ankle injury and pain; and yet it required him to continue working. We do not need to examine this evidence in detail, for the railroad has not appealed and there is no issue of the railroad's negligence in the particulars submitted. (Of course, the railroad by failing to appeal does not admit its negligence, but only that the evidence made out a prima facie case of negligence on its part.)

Plaintiff says the evidence did not justify the submission of his contributory negligence because there was no evidence that he knew or should have known that continued work on the injured ankle when it was hurting would cause substantial harm. Plaintiff points out that no physician had ever told him of this danger and that he should not be charged with this knowledge as a layman without medical knowledge. Without that knowledge, he argues, his continued working without reporting the pain was not negligence on his part. For this position, he cites our opinion in an earlier appeal of this case, *Conley v. Burlington Northern Railroad Company*, 712 S.W.2d 381 (Mo.App.1986).

We hold, however, that it was not necessary for plaintiff, in order to be found guilty of contributory negligence, to have received advice from a physician that his continued work on the injured ankle could result in the degree of disability which

ultimately resulted. A layman is held to know what the experiences of daily life teach and that which is commonly understood and believed. The jury could believe that plaintiff knew or should have known that he was risking some damage to his sprained ankle by continuing to work upon the painful ankle, and that his failure to report the pain was negligence on his part—even though, as was no doubt the case, he did not realize the extent of the disability which might result, or (to use the language of his brief) he "did not know and appreciate the gravity of the consequences."

In the first *Conley v. Burlington Northern Railroad Company,* supra, the court had before it a contributory negligence instruction which required a finding that plaintiff "knew or by using ordinary care should have known his performance of his regular duties was reasonably likely to cause him substantial harm but continued to perform such duties". This submission was held to be unsupported by the evidence in that plaintiff a layman could not be held to "have the medical knowledge to realize that his continued work might cause him substantial harm". 712 S.W.2d at 385. It is to be noted that the contributory negligence instruction in the present case does not require a finding by the jury that defendant knew or should have known that substantial harm was likely to result from his continued performance of his duties. It required findings only that plaintiff failed to report the pain to his superiors, that this failure so to report was negligence on his part, and that it contributed in some measure to his injury.

The *degree* of plaintiff's negligence depends to some extent upon his knowledge of the risk—upon what he knew as to the possible extent of the aggravation of the ankle injury, and the likelihood of a serious and permanent disability. The more he knew, the greater his negligence in not taking steps for his own protection. The less he knew, the smaller his negligence. This is one of those things the jury must weigh in determining the contributory negligence of plaintiff, if any. "The question of how much of the injury is attributable to the employee's own actions and lack of due care for his own condition is to be decided by the jury if there is any evidence at all of contributory negligence." *Taylor v. Burlington Northern R. Co.,* 787 F.2d 1309, 1314 (9th Cir.1986). "An employee is contributorily negligent when he fails to use those precautions for his own safety which ordinary prudence requires.... [I]f negligence on the art of plaintiff contributed in any way to causing his injury, a submissible jury case of mitigating negligence is made." *White v. St. Louis–San Francisco Ry. Co.,* 539 S.W.2d 565, 570 (Mo.App. 1976).

Plaintiff then says that there was no evidence of the hypothesized fact that plaintiff failed to advise defendant that his work assignments were causing pain in his ankle. He also says that, if there was evidence that he did not so advise the defendant railroad, still there was no evidence that his failure so to report caused the disability he complains of. He argues that the evidence shows that his employer knew, without his telling them, of the pain caused by his work, and that there is no evidence that his reporting the pain would have made any difference in its work demands upon him.

In determining whether an instruction is supported by the evidence, we of course take the evidence most favorable to such instruction, and ignore all evidence contrary to the hypotheses of the instruction. *Woten v. Day,* 684 S.W.2d 901, 902 (Mo. App.1985).

There was testimony that plaintiff failed to advise defendant that his work assignments were causing pain in his ankle; that his superiors did not know of the ankle pain caused by his work; and that if Conley had told them of the difficulties he was experiencing in working on the ankle, that they would have relieved him of his duties. That testimony was as follows:

From the time of Conley's initial injury November 17, 1979, until the termination of his employment in early January, 1983, Conley had two successive supervisors. At the time of the injury and until March 1,

1981, his supervisor was Clifford Paul Frederick. According to Frederick's testimony, Conley was off work from November 17 until November 23, then was placed on light or limited duty for a short time in accordance with a doctor's instructions, and then was returned to his regular duty. Frederick testified: "And he assured me that he was ready to work when he was put back in rotation". Frederick testified that Conley did not limp, and he at no time complained of ankle pain. Frederick testified that Conley would not have been put back to work if he had given any indication that his ankle was causing him difficulty, and he would have been sent to a doctor.

Frederick retired March 1, 1981, and was succeeded as Conley's supervisor by Marshall Whitecotton. Whitecotton testified that he never saw Conley limp and he had no indication of his ankle difficulty until August 5, 1982. At that time Whitecotton apparently noticed Conley's limp. Conley explained to Whitecotton that it was from the earlier injury. Whitecotton then told Conley to see a doctor. Conley consulted Dr. Gottsch, an orthopedist who had examined him at the time of the original injury. Gottsch recommended that Conley support the injured ankle by means of an elastic bandage and high-top shoes. Whitecotton's interpretation of this medical advice was apparently that Conley could continue the performance of his normal duties with this support and Conley did so continue, without complaint and without limping until the latter part of December. In the latter part of December, 1982, Whitecotton laid off Conley temporarily when Conley reported to him he was taking a certain prescription medicine, which Whitecotton determined caused drowsiness. Conley missed some work at this time, but returned to work briefly. Then, early in January, 1983, his employment came to an end, whether by dismissal or by voluntary resignation the record does not show. Whitecotton like Frederick testified that he would not have put Conley to work if he had had any idea that the work would injure the ankle.

The evidence thus supports the submission of plaintiff's failure to report his ankle pain to his superiors, and supports also the hypothesization that plaintiff's failure to complain of his ankle pain contributed to cause the aggravation to the ankle injury.

For his final assault upon the contributory negligence submission, plaintiff says that Burlington Northern's defense was actually an assumption of risk defense—a defense which has been abolished in FELA cases, 45 U.S.C.A. § 54 (1986); *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943)—which the railroad seeks to submit in the guise of contributory negligence. In a separate but related point, plaintiff charges trial court error in refusing an instruction offered by him which advised the jury that "(p)laintiff does not assume any of the risk of his employment", and which instructed them: "This matter is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

Plaintiff, for his position that the railroad was seeking by its contributory negligence instruction to foist off an assumption of risk defense, cites *Taylor v. Burlington Northern Ry. Co.*, supra, a case cited by both parties for various propositions. In *Taylor*, the court held that an employee's failure to "bid off" the section gang he worked on, and thereby escape a hostile and abusive supervisor, was assumption by the employee of the risk (of emotional injury from such supervisor's hostility, abuse and harassment) and not contributory negligence. The trial court was held not to be in error in excluding the railroad's intended testimony on the subject. Said the court at 787 F.2d at 1316–17:

> Here the employee simply reported to work under the person assigned; and though the supervisor was known to have a hostile disregard for the employee, it was not such an extraordinary situation that the employee is chargeable for refusing to demand other terms and conditions of supervision. His acts did not constitute contributory negligence under the FELA. Reporting to work or facing the risks inherent in one's job is the essence of assumption of risk ...

We are unable to see that plaintiff's hypothesized conduct in the case before us, i.e., his failure to report the pain in his ankle, could be seen in any way as constituting assumption of risk. A more apt description of plaintiff's conduct is found in that case at 787 F.2d at 1316: "Contributory negligence ... is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist." Plaintiff's negligent failure to report his pain, if found by the jury, tended to add new dangers to the conditions of his employment. Plaintiff's conduct as hypothesized in the comparative fault instruction did not constitute assumption of risk.

We find no error in the submission of plaintiff's contributory negligence, nor in the refusal of the instruction withdrawing from the jury the issue of assumption of risk.

JUDGMENT AFFIRMED.

All concur.