Jerry Wayne MATEER, Plaintiff–
Respondent,

v.

UNION PACIFIC SYSTEMS, d/b/a Union Pacific Railroad and Missouri Pacific Railroad Company, Respondents–Appellants.

No. 62890.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 19, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 9, 1993.

Case Transferred to Supreme
Court Jan. 25, 1994.

Case Retransferred to Court of
Appeals April 26, 1994.

Original Opinion Reinstated May 4, 1994.

Evans & Dixon, Stephen M. Buckley, St. Louis, for respondents-appellants.

Cervantes & Associates, Leonard P. Cervantes & Mario Silva, St. Louis, Jones & Granger, Douglas Ogle, Houston, TX, for plaintiff-respondent.

KAROHL, Judge.

This is an appeal by Union Pacific Systems (railroad) after a verdict and judgment in favor of Jerry Mateer in an action brought pursuant to the Federal Employers' Liability Act (FELA).

Mateer began working for the railroad in 1960. During the next twenty-four years he performed many and varied duties as part of his employment. He is now working for railroad as an inspector. In February, 1984, he was a machinist. From February, 1984, until March, 1985, and from November, 1985, to April, 1987, his work consisted of lubricating railroad locomotives. He worked in a four-foot deep pit and lubricated locomotives which were parked above the pit. The job required the machinist to check the lubrication in bearing boxes, carry a bucket containing up to twenty-five pounds of lubrication and move under the locomotive while bending, stooping and squatting.

In November or December, 1985, Mateer began making complaints about his health. He recalled a November or December, 1985, incident while working when he felt a pop in his back. He felt a sharp pain in the center of his back. He finished work on that day and did not really think much about it. Mateer did not report the event to the railroad. He acknowledged he was familiar with the manner in which a report of injury to the railroad was required.

Because of the pain, Mateer went to see Dr. Glen Davis, a gastroenterologist. Dr. Davis examined him for a gall bladder problem, but found none. In February of 1987, Dr. Davis referred Mateer to Dr. Ashley Ross, "a back doctor." For the first time, Mateer was informed that he suffered from a chronic back strain. When Mateer returned to work after a vacation, he presented a slip from Dr. Ross recommending thirty days light duty. On April 21, 1987, he presented

the light duty slip and an injury report to railroad. He explained he did not file an injury report previously because neither he nor his doctors knew what was wrong with him. As soon as he was informed that he had a back problem related to the pit job, he filled out and filed the personal injury report. Eight days after receiving the report railroad sent Mateer to Dr. Holmes. Dr. Holmes performed an EKG, a stress test, checked blood pressure and blood count and discussed the back. He recommended that Mateer go back to work but continue on light duty.

In May of 1987, Mateer consulted Dr. Harold Chakales, a board-certified orthopedist, "to find out what the problem was." After a number of tests, Dr. Chakales told Mateer he suffered residuals of a thoracic and cervical spine strain. He later concluded it was a chronic dorsal strain. In October of 1987, he discharged Mateer to return for treatment as needed. Mateer saw Dr. Chakales in 1989, 1990 and 1991, when he received injections of cortisone and xylocaine.

Mateer also consulted with Dr. Dillard Densons, a neurosurgeon, who diagnosed fibromyositis after a myelogram, Dr. Roberta Monson, a rheumatologist, who agreed with Dr. Denson, and Dr. Richard W. Houk. Mateer informed Dr. Houk that his back pain symptoms were more severe and more aggravated when working the lube job position. Dr. Houk found some osteoarthritic changes in the thoracic spine and fibrositis but concluded that neither condition was work-related.

Dr. James F. McFadden, a general surgeon, examined Mateer for the purpose of testifying on his behalf. The examination occurred in February, 1992. He testified Mateer suffered from exaggerated kyphosis which was work-related. He also found Mateer suffered myofascitis with myofiascial pain syndrome and thoracic disc syndrome as a result of the work he performed in the lube job position. Dr. McFadden testified in support of Mateer's theory that he suffered a cumulative trauma to his thoracic spine which caused his spine to be deformed. He concluded the conditions he found did not occur as a result of an accident that occurred

on one day. He found the back condition was the result of cumulative trauma, not sudden acute trauma. Rather, it was related to job activities over a period of time. In his opinion, the conditions were job-related whether or not Mateer first noticed pain in his back while off work. Mateer did not inform Dr. McFadden as part of his history that he had sustained sudden acute trauma in late 1985 or at any other time. Dr. McFadden expressed the opinion that the problems Mateer experienced with his back were the result of the work he performed in the lube job position before and after the onset of pain in 1985.

Railroad agrees Mateer made a submissible case on the issue of liability by offering evidence from which the jury could find railroad failed to provide a safe place to work and negligence under FELA, but not that the breach of duty caused employee to sustain a back injury. In briefs filed with this court, railroad "does not dispute that there was sufficient evidence adduced from which a jury could infer that the railroad did not provide a reasonably safe place to work or did not provide adequate help." However, the first claim of error contests a finding that the evidence was sufficient to prove "that any such alleged negligence was the cause of plaintiff's medical condition."

In reviewing a proof of medical causation issue we follow two mandates. Because this is a FELA suit, fact questions, to the maximum extent proper, shall be left to the jury. *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 509, 77 S.Ct. 443, 450, 1 L.Ed.2d 493 (1957). We view the evidence and reasonable inferences therefrom in a light most favorable to plaintiff and disregard defendant's contrary evidence. *Anderson v. Burlington N. R.R. Co.*, 700 S.W.2d 469, 472 (Mo.App.1985).

Given the standard of review, Dr. McFadden's testimony is sufficient to support a finding that the unsafe working conditions caused Mateer's back problems. In response, railroad contends plaintiff cannot have the benefit of Dr. McFadden's medical causation testimony because it is in direct conflict with his own testimony on the causa-

tion issue. Railroad relies on *Elliott v. Wescoat,* 336 S.W.2d 649, 651 (Mo.1960); *West v. St. Louis–San Francisco Ry. Co.,* 295 S.W.2d 48, 53 (Mo.1956); and *Mollman v. St. Louis Public Serv. Co.,* 192 S.W.2d 618, 621 (Mo. App.1946).

These cases support the sound rule that one may not predicate recovery upon a theory which is contrary to one's own positive evidence. In *Mollman,* plaintiff was a passenger in a taxicab which was struck by another vehicle. She sued both drivers. In her testimony, she absolved the taxicab driver of negligence but attempted to submit her claim against the taxicab company solely on the testimony of the driver of the other vehicle. The court applied the rule.

In *West,* the issue raised by the railroad on appeal was whether plaintiff had made a submissible case in negligence on the humanitarian doctrine of failure to warn of the approach of the train. The court held West did not make a submissible case. On the issue of failure to warn, plaintiff testified there was no train whistle. The court found plaintiff could not rely on contrary testimony of witnesses for the railroad who heard a whistle to support a humanitarian submission of failure to warn.

In *Elliott,* plaintiff testified she stopped at a stop sign when defendant's vehicle was between fifty and sixty feet from the intersection, slowing as though to stop at a stop sign. Plaintiff started forward and the vehicles collided in the intersection. Defendant testified his car and plaintiff's car were stopped at the same time with plaintiff to the right of defendant. The trial court refused an instruction which would have submitted plaintiff had the right of way on the theory when two vehicles are stopped at the same time, the vehicle approaching from the right has the right of way. The Missouri Supreme Court affirmed refusal to give the instruction by applying the applicable rule which bars recovery on a theory directly opposed by plaintiff's own testimony.

■ We find this rule of law, though valid, inapplicable. Mateer tried his claim on the theory of cumulative trauma. His testimony regarding the sharp pain in the center of his back which lasted a few seconds is not inher-

ently inconsistent with a back condition resulting from cumulative trauma. Mateer testified that he did not sustain an acute, distinct and sudden injury. He also testified that after each work day in the lube pit, he felt pain which required non-prescription medication. This testimony is distinctly different from the testimony given by the plaintiffs in *Mollman, West,* and *Elliott.* In each of those cases, plaintiff testified to his or her observations on matters relevant to the issue of liability of a taxicab driver, the presence of a train whistle warning of approach, and the location of defendant's vehicle relative to an intersection. Mateer's testimony regarding back pain is not authoritative or conclusive on the issue of medical causation. Nor was it a matter of observation by a layman that contradicts Dr. McFadden's opinion based on a medical diagnosis of cumulative trauma.

According to the testimony of Dr. McFadden, the November, 1985, event was not inconsistent with the opinion of cumulative trauma. Mateer did not contend nor did he try the case on the theory that his back injuries were traceable to a single accident in late 1985. All of the witnesses who testified for Mateer offered evidence from which the jury could find cumulative trauma caused the back injury. Neither the theory nor Mateer's testimony conflicted with Dr. McFadden's medical opinion. Because Dr. McFadden's testimony was probative and properly considered, railroad's complaint that Mateer failed to make a medical causation submissible case fails.

In support of a request for new trial, railroad presents two additional arguments. First, the court erred in refusing a tendered jury instruction to submit the issue of contributory negligence for failure to timely report injury to railroad. Second, the court erred in excluding evidence that Mateer was entitled to railroad retirement benefits and supplemental sickness benefits as additional available remedies for the claimed injuries. We disagree.

■ Railroad offered, and the court refused, the following instruction.

First, plaintiff knew or should have known that the performance of his duties

as a lube person at the service track were injuring his back and plaintiff failed to report this injury to the railroad, and

Second, plaintiff was thereby negligent and,

Third, such negligence of plaintiff directly contributed to cause his injury.

Railroad contends that Mateer's evidence indicated an injury in November or December of 1985. The original report of injury was filed in April of 1987. Between those two dates Mateer continued to work at the same employment which, by his cumulative trauma theory, caused or exacerbated his back injury. It has been held that a failure to notify employer of an injury, coupled with a continuation to work, which caused further injury, is contributory negligence. *Conley v. Burlington N. R.R. Co.*, 765 S.W.2d 272, 274 (Mo.App.1988) (*Conley II*). The court was obligated to submit the instruction if there was some slight proof of contributory negligence. *White v. St. Louis–San Francisco Ry. Co.*, 539 S.W.2d 565, 570 (Mo.App.1976).

█ Mateer offered testimony that when he requested the lube job employment he knew it was a two-man job. He performed over a number of months working alone. The work was strenuous and required constant stooping, bending, carrying, and insufficient rest because of the requirements to perform lubricating work on a given number of locomotives during an eight-hour shift. He constantly complained about the absence of help and the work conditions. He suffered physical discomfort and pain at the end of work shifts.

However, there is no evidence that prior to February, 1987, he was aware of medical causation relating his lube job work in the pit to a back injury. The evidence shows that after February, 1987, he first was referred to or consulted an orthopedic doctor. Sometime between February and April, 1987, he was advised that the work was related to the injury. He then promptly filed an injury report which relied on the causation connection. The report was filed approximately one year and four months after the one memorable incident involving sharp pain in the back. If Mateer relied upon, or the evidence would support, finding a single traumatic event as

the cause for the condition of injury, it would be relevant that he continued to work knowing of his injury without filing a report. In that event, the evidence would support a finding he was aware of a back injury and aggravated or exacerbated the injury by continuing to work. On that evidence, a jury could find that he knowingly continued to work under unsafe conditions which caused him injury without reporting the existing injury to his employer. *White*, 539 S.W.2d at 570. But that is contrary to plaintiff's theory and the evidence. There was no evidence he knew or should have known the work was causing a back injury before 1987.

In *Conley II*, plaintiff alleged and proved an aggravation of an earlier ankle sprain resulting from employer's negligence in assigning plaintiff to work when employer knew or should have known the work would aggravate the ankle condition. Conley sprained his ankle while working. Causation and the nature of injury were obvious. The court was aware FELA authorizes a reduction of damages in proportion to negligence attributal to employee. It was also aware that the case did not depend upon that provision in the law. "Rather, [this case] is one of the doctrine of avoidable consequences because the factual submission ... did not occur either before or at the time of defendant's negligence or the initial injury to Conley." *Conley v. Burlington N. R.R. Co.*, 712 S.W.2d 381, 383 (Mo.App.1986) (*Conley I*). The issue in *Conley II* was whether the court erred in submitting a contributory negligence instruction where plaintiff failed to report pain resulting from continuing to work on a sprained ankle. We found no error and held defendant-employer was entitled to the instruction because there was evidence to support a finding that employee's own actions, with full knowledge and lack of due care, contributed to causing his injury. Hence, a submissible jury case of mitigating negligence was made. We observed:

A layman is held to know what the experiences of daily life teach and that which is commonly understood and believed. The jury could believe that plaintiff knew or should have known that he was risking some damage to his sprained ankle by

continuing to work upon the painful ankle, and that his failure to report the pain was negligence on his part—even though, as was no doubt the case, he did not realize the extent of the disability which might result, or . . . he "did not know and appreciate the gravity of the consequences." *Conley II*, 765 S.W.2d at 274.

In the present case, railroad relied on *Conley II* and submitted the instruction in question, a hybrid patterned after MAI 32.07. Mateer responds that the instruction is not distinguishable from the one rejected in *Conley I*. The court there rejected an instruction which submitted contributory negligence on the basis of plaintiff's actual or constructive knowledge, that "performance of his regular duties was reasonably likely to cause him substantial harm but continued to perform such duties, or plaintiff failed to advise defendant that his performance of his regular duties was aggravating his ankle condition." *Conley I*, 712 S.W.2d at 382. We granted a new trial because no evidence was presented that plaintiff had received advice:

> by a medical practitioner that his continued performance of his regular duties, after he was injured on November 17, 1979, was reasonably likely to cause him substantial harm. Certainly, Conley, as a layman, would not have the medical knowledge to realize that his continued work might cause him substantial harm. *Id.* at 385.

Hence, we found submission of an instruction was unsupported by the evidence. This instruction concerned whether Conley knew or should have known that his performance of regular duties was reasonably likely to cause him substantial harm.

The trial court relied on *Conley I* and found *Conley II* not controlling. It found the first submission in the tendered instruction, "plaintiff knew or should have known that performance of his duties as a lube person at the service track were injuring his back and plaintiff failed to report this injury to the railroad," was unsupported where there was no proof to support a finding that Mateer, a layman, could have known the performance of his duties was injuring his back for the period November, 1985, to April, 1987.

The evidence would only support a finding that Mateer first became aware of a causal relationship between the work and his back pain shortly before he filed a report of injury in 1987. In *Conley II*, the employee sustained a sprained ankle on a fixed day. As a layman he was aware that continuing to work on the sprained ankle could aggravate the known condition and that there was a likelihood of serious and permanent disability by continued use of the disabled ankle. There is no such evidence in the present case. Here, Mateer had pain and medical complaints beginning in 1985. All the medical authorities who examined or treated him prior to 1987, attempted to find causation on the basis of conditions unrelated to his work. Mateer, as a layman, cannot be held to possess knowledge that performance of his duties as a lube person were causing a back problem where none of the medical authorities reached that diagnosis prior to 1987.

The instruction now reviewed is not comparable to the instruction approved in *Conley II*, which "required findings only that plaintiff failed to report the pain to his superiors, that this failure so to report was negligence on his part, and that it contributed in some measure to his injury." *Conley II*, 765 S.W.2d at 274. Here, Mateer did not have a known injury. Nor was he aware of causation for his medical complaints traceable to his employment until shortly before he filed a report of injury. There is no evidence in the present case to support a finding that Mateer was aware that continuing to perform his duties as a lube person was injuring his back or aggravating an existing injury. The instruction in the present case would require a finding that a lay person was aware of the medical causation of an unknown injury.

The evidence of the incident in November or December, 1985, which Mateer described as a popping in the back with momentary pain is not evidence of a sole cause accident causing the injury which is the subject of this lawsuit. Mateer never claimed that his back injury was the result of that event. The court properly refused the instruction as not supported by the evidence.

■ Railroad argues it is entitled to a new trial because the court erred and abused its

discretion in refusing to admit evidence that plaintiff was entitled to railroad retirement benefits and supplemental sickness benefits because of the injuries claimed in this FELA lawsuit. As a general rule in FELA cases, evidence of collateral source payments is not admissible. *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963). The Supreme Court observed that the possible misuse by the jury of such evidence outweighed its value. *Id.* at 255, 84 S.Ct. at 316. Our Supreme Court in *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 842 (Mo. banc 1992) recognized the exception to the general rule. It decided evidence of collateral source payments may be offered "if the plaintiff voluntarily injects the issue [of poverty] into the lawsuit." The court held the trial court did not abuse its discretion when it found plaintiff volunteered information regarding his poor financial condition during cross-examination and allowed evidence of non-poverty. Plaintiff Moore volunteered statements that he could not continue medical care because of a demand for cash. Moore said "I didn't have any money." This opened the door for proof he received money from three sources to disprove he had no money.

In the present case we review the opposite ruling of a trial court. The court refused evidence of collateral payments. It ruled the following comment made by Mateer's counsel in opening statement did not inject Mateer's financial condition into the case. Near the close of his opening statement the following was said:

> Finally, ladies and gentlemen, after you've heard all the evidence you're going to be asked to compensate Jerry Mateer for his injuries and that's why Leonard [co-counsel] was asking you the questions about if anybody has any problems awarding any damages, because that's our only recourse. That's his only way to be compensated for the harm that's been done to him.

■ We find no abuse of discretion in the ruling of the trial court that this statement did not inject Mateer's financial condition into the case so as to warrant an opportunity of railroad to rebut what was said. On its face the statement does not suggest anything

regarding Mateer's financial condition. It could apply to a wealthy injured employee in exactly the same measure as a financially distressed injured employee. Even if the statement, by an available interpretation, is not technically and completely accurate because of Mateer's entitlement to collateral source payments, it does not tend to support an enhancement of damages or foretell some evidence to be presented for the benefit of Mateer on the issues of liability or damages. The statement does not allude to any financial distress for the purpose of appealing to sympathy or to increase the award of damages. Moreover, the relevant remedy is damages if Mateer proved facts from which the jury could find liability. The reference during voir dire to "only recourse" was to explain why questions involved possible problems in awarding damages and the ability to award damages.

Finally, the statement of counsel is ambiguous because of the reference to "harm." It is not certain whether this refers to compensation for railroad's negligence or to the resulting injury. If the former, then clearly the statement did not invite evidence of collateral source benefits. We find no abuse of discretion in excluding the evidence of collateral source payments.

We affirm.

CRANE, P.J., and SMITH, J., concur.