# United States Court of Appeals
## For the First Circuit

No. 09-1164

DONALD J. BUTYNSKI,

Plaintiff, Appellant,

v.

SPRINGFIELD TERMINAL RAILWAY COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

Thomas Lesser, with whom Lesser, Newman & Nasser was on brief, for appellant.
Karen M. Thursby, with whom Herlihy, Thursby & Herlihy, LLP was on brief, for appellee.

January 22, 2010

**SELYA**, **Circuit Judge**.  This is a personal injury action brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60.  The jury found the defendant negligent but reduced the award of damages substantially based on a finding of contributory negligence.  The plaintiff appeals, posing claims of both instructional error and evidentiary insufficiency.  In the end, however, all roads lead to Rome, and a single exegesis suffices to show that the record contains evidence adequate to permit jury consideration of the disputed issue (thus defeating the claim of instructional error) and to ground a finding on that issue (thus defeating the claim of evidentiary insufficiency). Accordingly, we answer both questions at one fell swoop and affirm the judgment below.

We rehearse the facts as the jury could have found them, mindful that "when the losing party protests the sufficiency of the evidence, the court of appeals must take both the facts and the reasonable inferences therefrom in the light most hospitable to the jury's verdict." Correa v. Hosp. San Francisco, 69 F.3d 1184, 1188 (1st Cir. 1995).

Defendant-appellee Springfield Terminal Railway Co. (STRC), an employer subject to the FELA, employed plaintiff-appellant Donald J. Butynski for nearly a quarter of a century as a trackman.  The plaintiff's base of operations was the STRC rail yard in East Deerfield, Massachusetts, but his job description

-2-

called for him to work as needed along the STRC's rail lines throughout western Massachusetts.

On December 11, 2003, while part of a crew assigned to repair tracks in Otter River, the plaintiff slipped and fell. In trying to break his fall, he fractured his wrist. His injuries were disabling and spelled the end of his career with STRC.

For some two weeks before the plaintiff's fall, Otter River had experienced rain, snow, and frigid temperatures. On the day of the incident, the work site was icy (and, therefore, slippery). That condition was open and obvious.

In the winter, icy conditions are common fare on the STRC's lines. For that reason, STRC routinely furnishes its track-repair personnel with ice creepers — safety devices, capable of being strapped to work boots, which contain embedded metal cleats designed to improve the wearer's footing on snow and ice. Ice creepers are generally sturdy, and once STRC furnishes a pair to a trackman, there is no set schedule for periodic replenishment. If the trackman needs new ice creepers because his are worn out or lost, it is his responsibility to request replacements.

The plaintiff's foreman testified that, given the slippery conditions, wearing ice creepers was an appropriate safety measure at the time and place of the incident. Nevertheless, the plaintiff did not don ice creepers that day because his were stretched out and no longer fit properly. He admitted that he

knew, months earlier, that his ice creepers were shot. He said that he unsuccessfully requested replacements on approximately four occasions during the fall of 2003. His foreman confirmed that the plaintiff had asked for new ice creepers.

STRC denied that any such requests had been made. Various supervisory personnel at the rail yard testified that they could not recall the plaintiff either complaining about the condition of his ice creepers or seeking new ones. The railroad had no record of any such request.

Relatedly, there was no shortage of ice creepers in stock during 2003. For example, one supervisor testified that, prior to December 11, the rail yard had received seventy-eight pairs of ice creepers (some large and some extra-large) and that ice creepers were in adequate supply. STRC's witnesses stated that ice creepers were typically available upon request and, in the event that ice creepers were not immediately on hand to satisfy a request, new ones normally would be provided within a week.

In its answer to the complaint, STRC denied liability and pleaded contributory negligence as an affirmative defense. Consistent with this pleading, it advised the court in a pretrial submission that it would press for a jury instruction on that issue. At the close of all the evidence, STRC reaffirmed that it desired an instruction on this defense. The plaintiff objected to any instruction on contributory negligence and moved for judgment

as a matter of law with respect to that issue.  The district court viewed contributory negligence as a live controversy and therefore denied the motion for judgment as a matter of law.  Then, over the plaintiff's objection, the court instructed the jury, in relevant part:

> Contributory negligence is fault on the part of the person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury.  By the defense of contributory negligence, defendant in effect alleges that, even if defendant's negligence was one of the causes of plaintiff's injuries, plaintiff himself, by his own failure to use ordinary care under the circumstances for his own safety, also contributed one of the causes of any injuries and damages he may have suffered.  It was plaintiff's duty on December 11, 2003, to use reasonable care to avoid or minimize risk and possible injury to himself.

The jury found STRC liable and fixed the plaintiff's damages at $511,886.  It then found the plaintiff contributorily negligent and allocated fault sixty percent to him and forty percent to STRC.  Accordingly, the jury returned a verdict in favor of the plaintiff for $204,754.

The plaintiff seasonably renewed his motion for judgment as a matter of law with respect to the contributory negligence defense.  See Fed. R. Civ. P. 50(a)-(b).  The district court denied the renewed motion, finding sufficient evidence of contributory negligence to support the jury's determination. This timely appeal ensued.

-5-

In this venue, the plaintiff contends that the trial court should not have charged the jury on contributory negligence and that, in all events, the finding of contributory negligence was bereft of any evidentiary foundation. Although these are framed as separate assignments of error, they are for all practical purposes one and the same. The plaintiff's claim of instructional error does not take issue with the form or phrasing of the jury instruction but, rather, posits that the evidence did not warrant giving such an instruction at all. This is exactly the same rationale on which his argument regarding the motion for judgment as a matter of law rests.

The nature of the applicable standards of review illustrates why, in this instance, we can treat these two claims of error in a single exegesis. We review de novo a decision to instruct the jury on a particular issue, see SEC v. Happ, 392 F.3d 12, 28 (1st Cir. 2004), asking whether the evidence, viewed in the light most favorable to the proponent of the instruction, justifies jury consideration of the underlying issue. See Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 135 (1st Cir. 1997). Similarly, we review de novo the denial of a motion for judgment as a matter of law, Correa, 69 F.3d at 1191, asking whether the evidence, viewed in the light most favorable to the nonmovant, warrants jury consideration. Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001). We will not overturn

-6-

either the lower court's decision to instruct on an issue or its eschewal of judgment as a matter of law unless, at a bare minimum, the record reveals an insufficient evidentiary basis for the decision. See, e.g., Davis v. Rennie, 264 F.3d 86, 108-09 (1st Cir. 2001) (jury instruction); Zimmerman, 262 F.3d at 75 (judgment as a matter of law).

Here, the congruence of these standards is patent. In the last analysis, each claim of error depends on a showing that the record contains an insufficient evidentiary predicate to justify jury consideration of the contributory negligence defense. Thus, for ease in exposition, we proceed to discuss both claims of error under the carapace of the claim of instructional error.[1]

Evaluation of that claim starts with the statutory scheme. FELA creates a federal cause of action for injured workers in the railroad industry. 45 U.S.C. § 51. Congress has specified the rudiments of the right of action in the statute itself. Those rudiments include a low threshold for proving fault on the employer's part (and, thus, a low threshold for liability). See id.; Stevens v. Bangor & Aroostook R.R. Co., 97 F.3d 594, 597-98 (1st Cir. 1996). Contributory negligence is available as a defense. 45 U.S.C. § 53. It is not a complete bar to a plaintiff's recovery but, rather, operates to diminish the recovery

---

[1] There is one exception, see infra note 3 and accompanying text, but that is not a matter of any consequence.

in proportion to the parties' comparative fault.  See id.; Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 168 (2007).  Congress has not spelled out the dimensions of the defense, so courts must hew to its common law formulation.  See Sorrell, 549 U.S. at 168, 171; see also Jacobson v. N.Y., New Haven & Hartford R.R. Co., 206 F.2d 153, 155 (1st Cir. 1953) (explaining that when FELA does not specifically provide otherwise, concepts like negligence and contributory negligence may be fleshed out from federal common law).

An employer in a FELA case, like a prototypical defendant at common law, has the burden of proving the plaintiff's contributory negligence.  Sorrell, 549 U.S. at 171.  To do so, the employer must show that "the plaintiff's own negligence played a part in causing the injury."  Hopkins v. Jordan Marine, Inc., 271 F.3d 1, 3 (1st Cir. 2001);[2] accord Wright v. Ark. & Mo. R.R. Co., 574 F.3d 612, 616-17 (8th Cir. 2009).  An employer who has asserted a defense of contributory negligence in a FELA case is entitled to a jury instruction on that defense as long as the record contains some evidence from which contributory negligence can be inferred.  See Harris v. Ill. Cent. R.R. Co., 58 F.3d 1140, 1144 (6th Cir. 1995); Wise v. Union Pac. R.R., 815 F.2d 55, 57 (8th Cir. 1987);

---

[2] Hopkins is a Jones Act case, but the Jones Act incorporates the relevant provisions of the FELA by reference.  See 46 U.S.C. § 30104.  Thus, precedent under the Jones Act is deemed instructive in FELA cases, and vice versa.  See Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1281 n.15 (1st Cir. 1993).

see also Wilson v. Mar. Overseas Corp., 150 F.3d 1, 11-12 (1st Cir. 1998).

In this case, the plaintiff's theory of liability related to STRC's failure to provide him with proper equipment when it assigned him, in icy conditions, to repair the tracks. The jury found STRC liable, and that finding is not challenged on appeal. Thus, the lens of our inquiry narrows to focus on the jury's finding of contributory negligence and, more specifically, the propriety vel non of allowing the jury to decide that issue. This, in turn, hinges on whether the jury supportably could have found that the plaintiff's acts or omissions played a part in bringing about his injuries.

The record makes manifest that the plaintiff did not wear ice creepers on the day in question and that, in the opinion of some, wearing them would have made the workplace safer. The record makes equally clear that the plaintiff did not wear ice creepers because the ones that STRC had furnished him were no longer usable. The jury heard contradictory evidence (or, at least, evidence from which contradictory inferences could be drawn) about why the plaintiff was without usable ice creepers at that time. Viewing the evidence as a whole, we think that the jury reasonably could have found either that the plaintiff failed to request new ice creepers or, at least, that he did not request them in a timeous manner. Relatedly, the jury could have found

-9-

that STRC had ice creepers on hand and available for the asking. Findings of this sort would have supported a plausible conclusion that the plaintiff was, in part, the author of his own misfortune. Where, as here, there is room for a jury to choose among competing, record-rooted inferences, there is no basis for taking the issue from the jury. See Hopkins, 271 F.3d at 3-4; Wilson, 150 F.3d at 12. There was, therefore, no error in instructing the jury on the issue of contributory negligence.

The plaintiff musters a trio of counter-arguments aimed at blunting the force of this reasoning. We examine these counter-arguments sequentially.

First, the plaintiff contends that, by means of its opening statement and its summation, STRC admitted that he (the plaintiff) was not negligent (and, thus, foreclosed jury consideration of that issue). This contention comprises more cry than wool.

We begin with first principles. Counsel can make admissions during trial that will bind the client. Levinsky's, Inc., 127 F.3d at 134. Such admissions can be derived from the contents of opening statements or closing arguments. Id. In order to qualify as an admission under this rubric, such a statement, when viewed in context, must be clear and unambiguous. Id.; see also Best v. District of Columbia, 291 U.S. 411, 415-16 (1934) (cautioning that counsel's opening statement will not

qualify as an admission unless the supposedly admitted fact "clearly appear[s]" beyond all doubt to have been admitted).

In both his opening statement and his closing argument, STRC's lawyer leaned heavily on the theory that STRC should not be held liable because the December 11 incident, though unfortunate, was merely an accident that occurred without fault on anyone's part. But the lawyer did not in either instance put all his client's eggs in this one forensic basket. This multifaceted approach is particularly evident in his summation, where he pointed out conflicts in the evidence anent the availability of ice creepers and whether the plaintiff had requested new ones.

The plaintiff nonetheless asserts that, when all was said and done, STRC's attorney should be deemed to have admitted that he (the plaintiff) was free from fault. In examining this assertion, we think it useful to address the opening and closing separately. We start with the opening statement.

STRC's counsel told the jury that the proof would likely show that what had happened was "nobody's fault." He called the event an "accident" and did not mention contributory negligence as such. But this is at most suggestive; the lawyer also pointed the jury to anticipated evidence about the supply of ice creepers on hand and the uncertainty about whether the plaintiff had made a request to replace his dilapidated ice creepers. Given these comments, we do not believe that the opening statement fairly can

-11-

be said to constitute a clear and unambiguous admission that the plaintiff was free from fault.

This conclusion is reinforced by the fact that the plaintiff did not at that point move to take the issue of contributory negligence from the jury. Cf. Franchi Constr. Co. v. Combined Ins. Co., 580 F.2d 1, 8 (1st Cir. 1978) (noting trial court's power to direct verdict immediately following plaintiff's opening statement); Slotnick v. Staviskey, 560 F.2d 31, 32-34 (1st Cir. 1977) (affirming directed verdict based on opening statement). Rather, the opening statement ended; the trial went forward; and STRC, through both cross-examination and the proffer of its own witnesses, introduced evidence relating to the degree of care exercised by the plaintiff. Had the opening statement contained a clear and unambiguous admission that the plaintiff was not guilty of contributory negligence, it is likely that the case would have proceeded quite differently.

In his summation, STRC's lawyer argued that he "felt this was just an accident that happened on one day. [The plaintiff] lost his footing, as he said in his own report . . . ." Once again, there was no contemporaneous claim by the plaintiff that the summation constituted an admission relative to contributory negligence — and for good reason. Having studied the closing argument in its entirety, we are unable to find a clear and unambiguous concession anent the plaintiff's due care.

-12-

Taken in context, the references to an "accident" were a tactic designed to persuade the jury that STRC's conduct was not a cause-in-fact of the plaintiff's injury. The speaker did not exclude other possibilities but, indeed, pointed out discrepancies in the evidence pertaining to whether the plaintiff had requested ice creepers and reminded the jury about testimony attesting to the ready availability of an adequate supply of ice creepers. Those allusions would have been senseless had the absence of contributory negligence been admitted.

We conclude, without serious question, that contributory negligence was a live issue, admitted neither during STRC's opening statement nor during its closing argument. The mere fact that a party's counsel, in addressing the jury, chooses to emphasize one theory of the case does not, in and of itself, operate to waive the party's other defenses. See, e.g., Haines v. Risely, 412 F.3d 285, 289-90 (1st Cir. 2005); Levinsky's, Inc., 127 F.3d at 134-35.

The plaintiff next strives to convince us that the district court erroneously employed a "cookie cutter" approach to instructing the jury; that is, that the court believed that contributory negligence was an issue for the jury in every slip-and-fall case, regardless of the proof. We are not persuaded.

To be sure, the trial court did say at one point that it typically instructed on contributory negligence in slip-and-fall

cases.  Be that as it may, the argument that the court applied a mechanical rule is a non-starter.  The evidence in this case, viewed in the light most favorable to the proponent of the defense, warranted an instruction on contributory negligence. Thus, there was no reversible error here.

The plaintiff's last argument is textual.[3]  It proceeds from the premise that the district court instructed the jury to evaluate the plaintiff's conduct on December 11, 2003, and not otherwise.  Because no one introduced evidence of negligent conduct by the plaintiff on that day, the argument goes, any finding of contributory negligence must have been a camouflaged finding of assumption of the risk.  This would imply error because assumption of risk, unlike contributory negligence, is not cognizable as a defense in FELA cases.  See 45 U.S.C. § 54.

At common law, the distinction between assumption of the risk and contributory negligence is well-settled.  Assumption of the risk arises out of the knowing and voluntary acceptance of a dangerous condition.  See Seaboard Air Line Ry. v. Horton, 233 U.S. 492, 504-05 (1914); Hopkins, 271 F.3d at 3-4; see also Restatement (Second) of Torts §§ 496A, 496D (1965).  In contrast, contributory negligence arises out of any "careless act or omission on the plaintiff's part tending to add new dangers to

---

[3] Technically speaking, this argument is not a claim of instructional error but, rather, a pure claim of evidentiary insufficiency.

[existing] conditions." Taylor v. Burlington N. R.R. Co., 787 F.2d 1309, 1316 (9th Cir. 1986); see also Seaboard Air Line Ry., 233 U.S. at 503-04 (defining contributory negligence as a failure by the plaintiff to use ordinary care).

On this record, we do not think it can be said that the jury conflated these two concepts. Although the district court told the jury that "[i]t was plaintiff's duty on December 11, 2003, to use reasonable care to avoid or minimize . . . possible injury to himself" (emphasis supplied), it makes no sense to read that phrase in isolation and treat it as a circumscription of the issue of contributory negligence. Jury instructions must be reviewed contextually. An inquiring court should look at the charge as a whole and give the words used to convey the judge's message a common-sense interpretation. See Ellis v. United States, 313 F.3d 636, 645 (1st Cir. 2002); Elliott v. S.D. Warren Co., 134 F.3d 1, 6 (1st Cir. 1998); see also Hopkins, 271 F.3d at 4 (stating that "the test of jury instructions is not abstract perfection").

In the case at hand, the jury heard a great deal of testimony about the process for ensuring that track-repair workers had ice creepers, the availability of replacement ice creepers, the condition of the plaintiff's ice creepers, and when the plaintiff requested new ones. This evidence framed the extent to which the plaintiff's acts and omissions were put in issue. The

-15-

jury was instructed in broad terms, quoted <u>supra</u>, to consider the plaintiff's part (if any) in causing the accident.

It is also worth noting that the district court put the non-issue of assumption of the risk off limits. The court warned the jury against reducing the plaintiff's recovery based on assumption of the risk, stating:

> Keep in mind also that even though an employee such as plaintiff may know that the railroad has been negligent in failing to furnish him with necessary equipment such as properly functioning ice creepers, he does not, merely by continuing to perform his job, act negligently himself.
>
> . . . Contributory negligence may arise only from plaintiff's own act or acts of negligence, not from knowingly taking on a risk inherent in the work environment or a risk created by defendant's negligence.

Given these facts, the context of the trial does not lend itself to the notion that the charge limited the jury's consideration of the plaintiff's due care to the day of the accident. The court's date-specific allusion represented an attempt — albeit an awkward attempt — to focus the jury's attention on the circumstances leading up to the fall. Fairly read, the charge did not direct the jury to play the ostrich and ignore the copious evidence of plaintiff's earlier acts and omissions that formed the basis for STRC's contributory negligence defense.

We need go no further. The plaintiff's claim of instructional error fails. That conclusion requires us, for reasons already stated, to uphold as well the denial of the plaintiff's motion for judgment as a matter of law.

**Affirmed**.