**Dissenting and Concurring Opinions to Denial of Rehearing En Banc filed September 20, 2012.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-11-00815-CV

---

### THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant

### V.

### RONALD K. ONEY, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DANIEL D. ONEY, Appellee

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2011-32031**

---

## DISSENTING OPINION TO DENIAL OF REHEARING EN BANC

I respectfully dissent to the denial of rehearing en banc.

I agree with the panel majority's determinations that (1) this court has appellate jurisdiction to consider the interlocutory appeal of Kansas City Southern Railway Company (KCSR); and (2) this appeal does not pertain to claims based on the decedent's asserted exposure to diesel exhaust.

I disagree with the panel majority's affirmance of the MDL court's order denying dismissal and determining that "Plaintiffs are not required to file expert reports complying with Tex. Civ. Prac. & Rem. Code [Ch.] 90, et seq." because this case "arises under the Federal Employer's Liability Act, 45 U.S.C. § 51, et seq."  I would hold that the preemption analysis of Chapter 90's expert report requirements applicable to a Jones Act claim for injuries attributed to silica — announced in *In re GlobalSantaFe Corp.*, 275 S.W.3d 477 (Tex. 2008) (orig. proceeding) — applies with equal force to Chapter 90's expert report requirements governing a Federal Employer's Liability Act ("FELA") claim for injuries attributed to silica and asbestos exposure.  Under this analysis, Chapter 90's report requirement is not preempted by FELA.

Congress indisputably has the power to preempt state law.  U.S. Const. art. VI, cl. 2; *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  Congress may do so expressly or impliedly.  *Cipollone*, 505 U.S. at 516.  The intent to preempt state law may be explicitly stated in statutory language or implicit in a statute's structure and purpose. *Id.*  Implied preemption can be based on field preemption or conflict preemption.  *Id.* Field preemption exists when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law.  *Id.*  Conflict preemption exists when a state law actually conflicts with federal law or stands as an obstacle to accomplishment of Congress's purposes and objectives in enacting a federal law.  *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).  Thus, there are three possible routes to preemption.

Close reading is required to identify the exact route at issue in this case because appellee Ronald Oney does not clearly delineate the basis for his preemption assertion. Nor does the MDL court's order.

In "Plaintiffs' Motion for Continuance to Respond, Objections, and Response to Defendant Kansas City Southern Railway Company's Motion for Summary Judgment and Motion to Dismiss," Oney cited 45 U.S.C. § 55 and asserted broadly that "statutory requirements are void and preempted by the Federal Employers' Liability Act."  Oney

2

does so again on appeal. Section 55 states: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S.C.A. § 55 (West 2007). This provision is inapposite because Chapter 90's statutory expert report requirement is not a "contract, rule, regulation, or device" by which KCSR seeks to exempt itself from liability. *See Nordgren v. Burlington N. R.R. Co.*, 101 F.3d 1246, 1251 (8th Cir. 1996) (Phrase "[a]ny contract, rule, regulation, or device whatsoever" refers to "the legal instruments railroads used prior to the enactment of FELA to exempt themselves from liability."); *see also Downer v. CSX Transp., Inc.*, 507 S.E.2d 612, 616 (Va. 1998) (Section 55 "is limited to devices created by railroads to exempt themselves from liability."). If Oney's citation of 45 U.S.C. § 55 is an attempt to assert that Chapter 90 is expressly preempted by statute, the attempt fails.

On appeal, Oney also makes passing references to field preemption in the course of asserting that "KCSR is seeking to 'exempt itself from liability' under the FELA, under the auspices of sections 90.003, 90.004, and 90.007 of the Texas Civil Practices and Remedies Code." The MDL pleading contains no explicit reference to field preemption. Insofar as Oney attempts on appeal to argue field preemption in connection with Chapter 90, this attempt also fails. The disagreement in this case does not focus on whether a federal statutory scheme displaces state law remedies or liability standards. *See Cipollone*, 505 U.S. at 516 (State law is impliedly preempted when federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it.").

This case involves a different inquiry focusing on the interplay of federal substantive law and state procedural requirements arising from a FELA case pursued in state court. State and federal courts have concurrent jurisdiction over FELA cases. 45 U.S.C.A. § 56 (West 2008). "The Federal Act prescribes the substantive rights of the parties in F.E.L.A. cases, but when filed in our State courts, they are generally to be tried in accordance with our own Rules of Civil Procedure." *Mo. Pac. Ry. Co. v. Cross*, 501

S.W.2d 868, 870 (Tex. 1973); *cf. In re GlobalSantaFe Corp.*, 275 S.W.3d at 484 (Congress has not preempted the entire field of a maritime law; "[w]here Congress has acted in the admiralty area, 'state regulation is permissible, absent a clear conflict with the federal law.'" (quoting *Askew v. Am. Waterways Operators*, 411 U.S. 325, 341 (1973))). I agree with the majority that implied conflict preemption is the battleground here.

Oney's MDL court pleading and his appellate brief cite *Felder v. Casey*, 487 U.S. 131 (1988), which addressed implied conflict preemption of a state law notice-of-suit provision in connection with a claim brought under 42 U.S.C. § 1983. On appeal, Oney erroneously characterizes Chapter 90's expert report requirement as a notice-of-suit provision. *Felder* is inapposite because Chapter 90's expert report requirement is not a notice-of-suit provision and Chapter 90 contains no notice-of-suit requirement. *In re GlobalSantaFe Corp.* is the most pertinent authority because it addresses implied conflict preemption of parallel Chapter 90 expert report requirements for silica cases.

The majority approaches implied conflict preemption by minimizing the significant differences between Chapter 90's expert report requirement and the notice-of-suit mechanism analyzed in *Felder*. A sounder approach is to acknowledge the significant similarities between this Chapter 90 case and *In re GlobalSantaFe Corp.*'s analysis of Chapter 90 preemption in the context of a Jones Act suit for injuries attributed to silica.

A unanimous Texas Supreme Court concluded that certain of section 90.004's expert report requirements for silica claimants were not subject to implied conflict preemption under the Jones Act. *See In re GlobalSantaFe Corp.*, 275 S.W.3d at 486-89.

According to the supreme court, "The requirements embedded in Chapter 90 to assure reliable expert confirmation of silica-related diseases are not preempted by the Jones Act." *Id*. at 486. "Nothing in the Jones Act exempts a seaman claiming a silica-related disease from establishing, through reliable medical proof, that he in fact suffers from such a disease." *Id*. "To the extent that Jones Act jurisprudence recognizes a

special standard for proving causation, federal cases have held that this causation standard does not exempt Jones Act cases from the general rules for admission of expert testimony." *Id*. at 487 (citing *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004)). "We see no basis for holding that Texas law generally governing the admission of expert testimony, which draws so heavily from federal law, is preempted by the Jones Act." *Id*. "Therefore, the provisions of Chapter 90 directed at assuring reliable expert confirmation of the existence of one of the medically recognized forms of silica-related illness are not preempted." *Id*. "In short, the principles of Jones Act preemption are flexible enough to accommodate general Texas rules governing the admission of expert testimony, and also accommodate the Chapter 90 rules specific to expert testimony in cases involving silica-related injuries . . . ." *Id*. at 489.[1]

In my view, the supreme court's reasoning in *In re GlobalSantaFe Corp.* is equally applicable to Chapter 90's expert report requirements in connection with claims under FELA for injuries attributed to silica and asbestos exposure. This court already has covered much of the same ground as *In re GlobalSantaFe Corp.* by analyzing the intersection between expert testimony standards and FELA's lower burden of proof. "Despite the lower burden under FELA, a plaintiff still bears the burden of presenting evidence from which a jury could conclude the existence of a probable or likely causal relationship as opposed to a merely possible one." *Abraham v. Union Pac. R.R. Co.*, 233 S.W.3d 13, 17 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), *cert. denied*, 128 S. Ct. 1900 (2008). "The lower burden under FELA does not mean that, in FELA cases, courts must permit expert testimony that would not be admissible in other contexts." *Id*. at 19; *see also Mo. Pac. R.R. Co. v. Navarro*, 90 S.W.3d 747, 750-51 (Tex. App.—San

---

[1] The supreme court concluded that a provision addressing a minimum physical impairment requirement is preempted. *In re GlobalSantaFe Corp.*, 275 S.W.3d at 489 (citing Tex. Civ. Prac. & Rem. Code Ann. § 90.004(b)(2)). KCSR concedes that a parallel minimum physical impairment requirement in section 90.003(a)(2)(D) addressing asbestos claims likewise is preempted under FELA. The MDL court is the appropriate court to determine in the first instance on a requirement-by-requirement basis whether any other provision of sections 90.003 or 90.004 conflicts with FELA. Whatever the result of such an analysis, it is erroneous to conclude that the report mechanism is preempted in its entirety in connection with FELA claims for injuries attributed to silica and asbestos exposure.

Antonio 2002, no pet.). Oney and the panel majority do not provide a convincing rationale for analyzing preemption of Chapter 90's report requirements in a FELA case differently from preemption of Chapter 90's report requirements in a Jones Act case.

Oney offers two justifications for a different Chapter 90 preemption analysis here. Neither justification withstands scrutiny.

First, Oney stresses that "*In re GlobalSantaFe* involved silica-related claims, not asbestos-related claims." Oney also emphasizes the supreme court's statement that "we have not examined the provisions of Chapter 90 relating to asbestos-related claims, and express no opinion on whether any such provisions are preempted." *In re GlobalSantaFe Corp.*, 275 S.W.3d at 489 n.78. This distinction is accurate but hardly dispositive. As the supreme court has noted, Chapter 90's expert report requirements for silica cases in section 90.004 and asbestos cases in section 90.003 were born of the Legislature's identification of "an asbestos litigation crisis." *Id.* at 482. The Legislature "warned of a similar crisis looming over silica-related actions, evidenced by a recent spike in such claims, and raising some of the same concerns applicable to the asbestos crisis." *Id.* Chapter 90's parallel expert report requirements for silica cases and asbestos cases were part of the legislative response. *Id.* "[B]y requiring detailed expert reports early in the litigation process, Chapter 90 endeavors to assure that claims are not brought and pursued unless they are supported by reliable expert evaluations of the claimant." *Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 90.003-90.004). These intertwined circumstances make it difficult to justify divergent approaches to Chapter 90 preemption for silica and asbestos claims. In addition, Oney has pled that he was exposed to both asbestos and silica and that as a result of these substances, he was diagnosed with lung cancer. Under Oney's reasoning he should at least provide a report as to silica exposure.

Second, Oney stresses that *In re GlobalSantaFe Corp.* analyzed preemption in connection with the Jones Act rather than FELA. This argument is not persuasive. Concurrent jurisdiction exists in connection with both statutory schemes. *See id.* at 480 n.2 ("Under the 'saving to suitors' clause of 28 U.S.C. § 1333(1), a Jones Act claim can

6

be brought in state court.") (citations omitted); *see also* 45 U.S.C. § 56. This concurrent jurisdiction gives rise to similar tensions between federal substantive law and state procedure in both types of cases. More importantly, the Jones Act incorporates FELA by reference. *See* 46 U.S.C.A. § 30104 (West 2008). In light of this incorporation, "precedent under the Jones Act is deemed instructive in FELA cases, and vice versa." *Butynski v. Springfield Terminal Ry. Co.*, 592 F.3d 272, 276 n.2 (1st Cir. 2010); *see also Abraham*, 233 S.W.3d at 19 n.2. Therefore, Oney's second proffered distinction is not dispositive.

The majority opinion takes a different tack by focusing on section 90.007's dismissal mechanism, which was not addressed in *In re GlobalSantaFe Corp.* This distinction likewise fails to demonstrate that a divergent preemption analysis is warranted in this case. As a threshold matter, it is worth noting that the majority's concerns regarding the effect of dismissal rest in large part on suppositions about the prospects for a limitations bar in this and other cases if dismissal occurs — suppositions that run counter to Oney's position that KCSR cannot assert a viable limitations defense in this case. In any event, the supreme court's preemption analysis in *In re GlobalSantaFe Corp.* did not focus on the potential consequences of a failure to comply with expert report requirements. Instead, that analysis focused on the compatibility between federal standards requiring reliable expert testimony and similar Texas standards reflected in Chapter 90. *See In re GlobalSantaFe Corp.*, 275 S.W.3d at 486-89. That should be the focus in this case, too.

The majority's reliance on the possibility of dismissal as the distinguishing factor does not withstand scrutiny even if credence is given to suppositions about the potential for a limitations bar after dismissal. Also questionable is the majority's suggestion that Chapter 90 preemption analysis turns on whether a claimant can "conduct discovery to obtain the information needed to satisfy the report requirements." Such a suggestion is — at the very least — in tension with the Legislature's concern regarding "enormous litigation expenses" and its desire for "detailed expert reports early in the litigation

process." *Id*. at 482. The majority's distinctions, even if granted the benefit of every doubt, ultimately collide with the following longstanding principle: "A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." *Robertson v. Wegmann*, 436 U.S. 584, 593 (1978).

The panel majority's holding is incompatible with *In re GlobalSantaFe Corp.* and *Abraham*; therefore, rehearing en banc is warranted. I respectfully dissent from the denial of rehearing en banc.

/s/ William J. Boyce
   Justice

En Banc Court consists of Chief Justice Hedges and Justices Frost, Seymore, Brown, Boyce, Christopher, Jamison, McCally, and Busby, and Senior Justice Mirabal.[2] (J. Boyce dissenting to denial of rehearing en banc, joined by Justices Brown, Christopher, Jamison, and Busby). (J. Frost concurring on denial of rehearing en banc).

---

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.