NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

WES C. DAVIS, *Plaintiff/Appellant*,

*v.*

BNSF RAILWAY COMPANY, *Defendant/Appellee*.

No. 1 CA-CV 13-0083
FILED 4-1-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2008-017741
The Honorable J. Richard Gama, Judge

**AFFIRMED**

---

COUNSEL

Osborn Maledon PA, Phoenix
By Mark I. Harrison, Brandon A. Hale

And

St. John & Romero, Mesa
By Jason J. Romero

And

Hildebrand McLeod & Nelson, Oakland, CA
By Anthony S. Petru, Kristoffer S. Mayfield
*Co-Counsel for Plaintiff/Appellant*

Thorpe Shwer, Phoenix
By William L. Thorpe, Bradley D. Shwer and Adam T. Reich
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

**G O U L D**, Judge:

¶1          Wes C. Davis appeals from the jury's verdict in his Federal Employer's Liability Act ("FELA") action against BNSF Railway Company ("BNSF") awarding him $3 million in damages, but apportioning 95% of fault to him.  He argues the court should not have instructed the jury on comparative fault, and the jury's verdict is not supported by the evidence. We determine there was sufficient evidence both to instruct the jury on comparative fault and from which the jury could have reached its verdict, and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          On September 11, 2005, Davis was working as a BNSF conductor on an eastbound train heading to the Winslow, Arizona terminal.  The train was stopped due to traffic ahead.  While the train was stopped, a westbound train leaving Winslow approached on the adjacent track.

¶3          BNSF General Code of Operating Rules ("GCOR"), require conductors to detrain to perform a visual roll-by inspection of passing trains whenever the conductor's train is stopped and another train will pass.  In compliance with this rule, Davis detrained by climbing down the ladder on the south side of the locomotive onto the mainline ballast below. Mainline ballast, which consists of crushed rock approximately 2.5 inches in diameter, is built up beneath the track and slopes about three or four feet to the ground; Davis was required to traverse this slope to be in position for the roll-by inspection.

¶4          As Davis released the handrail and began walking down the slope, the ballast shifted beneath his weight.  Davis turned back toward the locomotive to try to catch himself; he felt a twist and popping in his

2

ankle and fell to the ground. Davis reported the injury and received medical attention. At the time of the accident, Davis was wearing all the required safety equipment and he was not found to have violated any company safety rules.

**¶5**　　　　Davis filed a FELA action against BNSF. The jury awarded Davis $3 million in damages; however, it attributed 95% of the fault to Davis, and only 5% to BNSF. Following the verdict, Davis filed a motion to alter or amend the judgment arguing the evidence did not support the verdict and the court erred in excluding evidence of other mainline ballast slip and fall injuries.[1] The court denied Davis' motion concluding that substantial evidence supported the jury's apportionment of fault and that it had properly excluded evidence of prior incidents. Davis timely appealed.

## DISCUSSION

I.　　Comparative Fault Jury Instruction

**¶6**　　　　Davis argues the court erred by giving the jury an instruction on comparative fault because there was no evidence from which the jury could reasonably conclude Davis acted without due care. As a preliminary matter, BNSF contends Davis waived his objection to the court's inclusion of the jury instruction because he did not properly object to it. A party must object to a jury instruction "stating distinctly the matter objected to and the grounds of the objection." Ariz. R. Civ. P. 51(a). A general objection will not satisfy this rule. *Rhue v. Dawson*, 173 Ariz. 220, 228, 841 P.2d 215, 223 (App. 1992). "An objection that the evidence does not support the giving of the instruction is . . . a general objection and is insufficient." *Spillios v. Green*, 137 Ariz. 443, 447, 671 P.2d 421, 425 (App. 1983).

**¶7**　　　　While discussing the final jury instructions, Davis indicated that he did not feel an instruction on contributory negligence was appropriate, stating:

> Frankly, we had submitted a jury instruction indicating, in this case, there's no comparative fault. For the record, I do not believe that there is any evidence that Mr. Davis was negligent in any way, shape or form. In fact, there's

---

[1]　　In this appeal, Davis does not raise the trial court's order precluding evidence of prior injuries.

3

testimony from his managers that he's committed no rule violations. And I don't think a comparative fault instruction should be given.

During the course of the discussion Davis proposed the following instruction directing that he could be found contributorily negligent:

I think it could read – and I wouldn't have any objection to this: If you find from the evidence that any negligence on the part of BNSF Railway Company *or Plaintiff* contributed, in any way or manner, towards any injury suffered by Plaintiff, then that injury was caused by . . . that party's negligence. (Emphasis added.)

¶8　　　　　Accordingly, taking the somewhat general nature of Davis' original objection, with his later apparent withdrawal of his objection while at the same time offering a contributory negligence instruction, we conclude Davis did not sufficiently object and he has waived this issue absent fundamental error. *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 420, 758 P.2d 1313, 1322 (1988) (concluding that because party did not object to the instruction it waived the issue unless giving the instruction was fundamental error). Because it is fundamental error to instruct the jury on contributory negligence "if no evidence is presented from which a jury could properly find a lack of due care by a plaintiff," we will consider Davis' claim. *Wilson v. Burlington N., Inc.*, 670 F.2d 780, 782 (8th Cir. 1982); *see also Jones v. Consol. Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986); *Paluch v. Erie Lackawanna R. Co.*, 387 F.2d 996, 999 (3d Cir. 1968).

¶9　　　　　Davis brought his FELA action in state court. "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985). Whether or not a jury instruction is warranted "is an issue of 'substance' determined by federal law." *Id.*

¶10　　　　FELA entitles an employee to recover damages "if the employer's negligence played *any* part in producing the injury, no matter how slight." *Taylor v. Burlington N. R. Co.*, 787 F.2d 1309, 1313 (9th Cir. 1986). The comparative negligence scheme of FELA reduces a plaintiff's recovery in proportion to his share of responsibility for the injury. *Fashauer v. New Jersey Transit Rail Operations, Inc.*, 57 F.3d 1269, 1282 (3d Cir. 1995). The affirmative defense of contributory negligence is available; "it is not a complete bar to a plaintiff's recovery but, rather, operates to diminish the recovery in proportion to the parties' comparative fault."

*Butynski v. Springfield Terminal R. Co.*, 592 F.3d 272, 276 (1st Cir. 2010). Moreover, while the burden of proof is on the defendant, a defendant is entitled to an instruction on contributory negligence "if there is any evidence at all of contributory negligence." *Taylor*, 787 F.2d at 1314; *see Butynski*, 592 F.3d at 277 (An "employer who has asserted a defense of contributory negligence in a FELA case is entitled to a jury instruction on that defense as long as the record contains some evidence from which contributory negligence can be inferred.").

¶11        To be sent to the jury, the weight of the evidence must be more than a scintilla, "but a string of circumstances may be enough for the submission of the issue." *Haines v. S. Pac. Co.*, 7 Ariz. App. 65, 70-71, 436 P.2d 159, 164-65 (1968) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479 (1943) and *Daulton v. S. Pac. Co.*, 237 F.2d 710, 713 (9th Cir. 1956). An employer cannot reach the jury on the issue of the employee's contributory negligence by attacking the plaintiff's credibility alone; the employer must present other evidence. *Dixon v. Penn Cent. Co.*, 481 F.2d 833, 837 (6th Cir. 1973); *see also Butynski*, 592 F.3d at 276 ("[T]he employer must show that 'the plaintiff's own negligence played a part in causing the injury.'"). Once an employer produces evidence from which contributory negligence can be inferred, he "may be assisted in sustaining his burden by the jury's disbelief of plaintiff's testimony." *Dixon*, 481 F.2d at 837.

¶12        Davis argues that there was no evidence to support the court's decision to instruct the jury on contributory negligence. He claims his testimony that he stepped off the train carefully was uncontradicted, and the evidence presented by BNSF corroborated his statements that he was required to detrain to perform roll-by inspections, that he could not have prevented the accident, and that he did not add additional dangers to his workplace environment.

¶13        Davis' testimony was not contradicted by any other direct evidence because he was the only witness to the accident; however, BNSF did offer circumstantial evidence from which Davis' negligence could be inferred. *See Lynch v. Northeast Reg. Commuter R.R. Corp.*, 700 F.3d 906, 917 (7th Cir. 2012) (stating that a jury can make reasonable inferences based on circumstantial evidence "even where conflicting inferences are also appropriate and no direct evidence establishes which inference is correct").

¶14        There was sufficient evidence for the court to instruct the jury on comparative fault. BNSF presented evidence that mainline ballast is a reasonably safe surface on which to walk if one does so carefully.

BNSF also presented testimony that the mainline ballast at the site of Davis' accident was typical mainline ballast. Davis had training and experience walking on ballast; he testified he had performed hundreds of roll-by inspections from the ground without incident. Davis' ankle was injured when, as the ballast shifted beneath his weight, he twisted and turned back to grab the locomotive behind him. There are two competing inferences the jury could have made from this evidence. One, that Davis' twisting and turning back to catch himself on the locomotive was a reasonable reflex to avoid falling and hitting his head on the ballast. Two, that based on Davis' training and experience it was negligent to twist and attempt to change his direction as the ballast shifted beneath his weight, rather than steadying himself and letting the ballast settle. Where a jury could choose among competing, evidence-based inferences, the issue must be sent to the jury. *Butynski*, 592 F.3d at 277; *see also Meyers v. Union Pac. R. Co.*, 738 F.2d 328, 331 (8th Cir. 1984) (finding no error in instructing jury on contributory negligence where there was evidence from which the jury could reasonably conclude plaintiff did not exercise due care).

II.     95% Apportionment of Fault

¶15     Davis next argues the court erred in denying his motion to amend the judgment because the evidence did not support the jury's verdict that he was 95% at fault.

¶16     Following the verdict awarding Davis $3 million in damages but apportioning 95% of the fault to him, Davis filed a motion to alter or amend the judgment pursuant to Arizona Rule of Civil Procedure 59(a)(6), (8). He argued the evidence did not support the jury's apportionment of fault and that the court erred in rejecting certain evidence. The court denied Davis' motion stating that "there was substantial evidence presented to support the jury's allocation of fault," and that it properly excluded the evidence. Davis now argues the court erred in denying his motion because the record does not justify the verdict.

¶17     The trial court has broad discretion to grant a new trial; the court has substantial latitude in deciding whether to upset the verdict because it has seen the witnesses, heard the testimony, and "has a special perspective of the relationship between the evidence and the verdict." *Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978); *see also Hutcherson v. City of Phx.*, 192 Ariz. 51, 53, ¶ 12, 961 P.2d 449, 451 (1998). However, the court "is not justified in setting aside a verdict and granting a new trial where there is substantial evidence to support the verdict or the evidence is 'equiponderant.'" *Joy v. Raley*, 24 Ariz. App. 584, 585, 540

P.2d 710, 711 (1975). A court has discretion to act when the verdict is "so 'manifestly unfair, unreasonable and outrageous as to shock the conscience.'" *Hutcherson*, 192 Ariz. at 55, ¶ 23, 961 P.2d at 453, citing *Young Candy & Tobacco Co. v. Montoya*, 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962).

¶18 In our review, we view the evidence in the light most favorable to upholding the jury verdict; "if any substantial evidence exists permitting reasonable persons to reach such a result, we will affirm the judgment." *Hutcherson*, 192 Ariz. at 53, ¶ 13, 961 P.2d at 451. "[I]t is not contributory negligence to fail to discover a danger when there is no reason to apprehend one." *Paluch*, 387 F.2d at 999 (injured worker who was totally inexperienced and relied on his superior's statement that it was safe; no contributory negligence for failure to discover a danger his more-experienced superior did not detect). BNSF has a duty to provide a safe working environment; however, in determining whether a worker's negligence contributed to his injury the jury can consider the manner in which the worker performed his job in that environment. *See Birchem v. Burlington N. R. Co.*, 812 F.2d 1047, 1049 (8th Cir. 1987). To arrive at its verdict, the jury necessarily concluded that BNSF's negligence contributed to Davis' injury; yet, it determined that Davis' own actions caused the majority of the harm he suffered.

¶19 Davis' theory throughout the case was that BNSF's policy of requiring its workers to detrain in order to perform roll-by inspections on mainline ballast was negligent. "[W]hen an employee carries out his supervisor's general order in an unsafe manner, he is responsible under FELA for his own contributory negligence. But when an employee carries out a direct order, even if he has reason to know the order exposes him to danger, he is not contributorily negligent." *Jenkins v. Un. Pac. R. Co.*, 22 F.3d 206, 211 (9th Cir. 1994). The critical distinction is between a general order and a direct one. *Id.* Davis characterizes the GCOR requiring that he detrain to perfom a roll-by inspection as a direct order that he was required to follow, even if doing so exposed him to danger. The language of the rule indicates that an inspection must be performed when a train is stopped and met or passed by another train. However, the rule only requires the inspection be made from the ground if there is a safe location, and Davis would only be required to cross the track to perform the inspection if it was safe to do so. From this evidence, the jury could have concluded that the roll-by inspection was a general order and that Davis was responsible to exercise due care in carrying it out.

¶20 Davis argues the evidence indicated he complied with all safety rules and his testimony that he stepped off the train in the proper manner was uncontradicted. He relies on *Dixon*, 481 F.2d 833, in arguing that BNSF improperly relied only on his alleged lack of credibility without producing any other evidence that his conduct fell below the normal standard of care.

¶21 However, *Dixon's* discussion of *Domany v. Otis Elevator Co.*, 369 F.2d 604 (6th Cir. 1966), is more applicable to this case. *Dixon*, 481 F.2d at 837. In *Domany*, the "plaintiff fell on an escalator that stopped suddenly, and the issue of her contributory negligence turned on whether she was holding the handrail as she claimed." *Dixon*, 481 F.2d at 837. The defendant introduced evidence that other people who were holding the handrail did not fall and evidence of "tests indicating that people who hold on to the handrail will not fall when an escalator stops." *Id.* This evidence was a permissible basis from which the jury could infer the plaintiff's testimony that she was holding the handrail was untrue. *Id.*

¶22 Here, BNSF introduced evidence that although mainline ballast is likely to shift underfoot it does not pose a hazard of injury if a person is paying attention. Davis testified that he had performed hundreds of roll-by inspections from the ground and he had slipped on shifting ballast without injury before. BNSF also introduced a video showing individuals walking on the mainline ballast in the area near where Davis was injured performing various tasks without the ballast shifting or injury. Davis testified that as the ballast shifted, he twisted back toward the train and injured his ankle. As identified in *Dixon*, this is sufficient evidence from which the jury could infer that Davis' decision to twist and turn towards the train, given his training and experience, was not reasonable under the circumstances and that his testimony that he detrained carefully and safely and was injured despite exercising due care was untrue. *See supra*, at ¶ 14.

¶23 Davis argues the evidence BNSF presents in support of an inference of Davis' contributory negligence is actually evidence of an impermissible assumption of risk defense. "Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense." *Taylor*, 787 F.2d at 1316. Assumption of risk is "an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties." *Id.* "In contrast, contributory negligence

arises out of any 'careless act or omission on the plaintiff's part tending to add new dangers to [existing] conditions.'" *Butynski*, 592 F.3d at 279, citing *Taylor*, 787 F.2d at 1316. The court properly instructed the jury that it could not find that Davis assumed the risks of his employment. Further, the evidence presented was sufficient to show that walking on mainline ballast could be performed safely and it was Davis' "careless act or omission" that caused to him injure his ankle as the ballast shifted and he fell.

## CONCLUSION

**¶24** We find there was sufficient evidence to send the issue of contributory negligence to the jury, and there was substantial evidence from which the jury could apportion 95% of the fault to Davis. Accordingly, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT